## Smith et al. *v.* Smith, Etc., Appellant.

*Ejectment—Title to real estate—Tenants in common—Evidence —Parol agreement for sale of real estate—Competency.*

Parol agreements for the sale of real estate are contrary to the statute of frauds and are unenforceable, in the absence of any payment of purchase money or any change in possession taken in pursuance of the agreement.

A sale by the sheriff on a tax lien to one of several tenants in common does not divest the title of his cotenants.

*Ejectment—Judgment—Mesne profits.*

An action of trespass to recover mesne profits cannot be maintained by one who is not in actual occupancy of the land in ques-

tion.  The right of a true owner to the use and profits of the land is suspended, until he gains possession either by an entry or under a legal judgment.

In an action of ejectment, the subject for litigation and determination is not merely the right of possession of the land, but also the mesne profits, if any, that would flow from a wrongful detention of it from the true owners.  It is reversible error, therefore, to enter judgment in ejectment and award a new trial for the purpose of separately considering the question of mesne profits.  The question is for the jury, both as to the right of the parties to the possession of the premises and also the ascertainment of the amount of mesne profits, if any are due, and the entire question should be submitted in one proceeding.

Argued April 28, 1921.  Appeal, No. 127, April T., 1921, by defendants, from judgment of C. P. Allegheny Co., Oct. T., 1919, No. 1584, on verdict for plaintiff in the case of William J. Smith, Peter S. Smith, James Smith, Mary E. Anderson, Katherine Smith Pastorius, Bella Smith Moegele and Anna Jones Smith, v. Hattie Smith and Hattie Smith, Executrix of the Estate of Dennis J. Smith, deceased.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Ejectment to recover two pieces of ground in the 17th Ward, City of Pittsburgh.  Before REID, J.

The facts are stated in the opinion of the Superior Court.

The jury entered the following verdict:

And now, to wit, October 20, 1920, we the jurors empanelled in above entitled case find for the plaintiffs Mary E. Anderson, James Smith, Katherine Smith Pastorius and Bella Smith Moegele together the undivided one-fourth ($\frac{1}{4}$) of the lands described in the writ, being the undivided one-sixteenth (1/16) for each of said plaintiffs, subject to the dower of Anna Jones Smith, widow of Joseph Smith, deceased; and we further find and award in favor of the said Mary E. Anderson, James

227, (1921).]     Verdict—Opinion of the Court.

Smith, Katherine Smith Pastorius and Bella Smith Moegele, the sum of four hundred nineteen & 76/100 dollars (being the sum of $104 94/100 for each of said plaintiffs) as damages being mesne profits due them from the said defendant.

As to the above-named plaintiffs William J. Smith and Peter S. Smith we find for the defendant.

Subsequently the court, on motion, made the following order in favor of the plaintiffs non obstante veredicto:

And now, January 7, 1921, it is ordered that the rule in the above entitled case ex parte William J. and Peter S. Smith upon defendant to show cause why judgment should not be entered in favor of said plaintiffs and against the defendant n. o. v. be and the same is hereby made absolute.

The prothonotary is therefore directed to enter judgment in favor of said plaintiffs for the undivided one-fourth (1/4) each in and to the lands in controversy.

It is further ordered, for the purpose of determining the amount, if any, of damages due and payable by defendant to the said William J. and Peter S. Smith in the nature of mesne profits for the detention of the land, that a retrial of said case be had, solely for the purpose aforesaid, and the prothonotary is therefore directed to place such cause upon the trial list whence it will be taken in due course for the purpose of determining the issue aforesaid.

Defendant appealed.

*Error assigned*, among others, was the order of the court.

*W. C. McClure* and *John A. Metz*, for appellant.

*Earl F. Reed* and *William S. Doty*, for appellees.

OPINION BY HEAD, J., July 14, 1921:

Sometime prior to the institution of this suit the premises in controversy were owned by four brothers as ten-

ants in common in equal shares. One of the brothers, Joseph, died intestate leaving him to survive a widow and four children. Two of the brothers, William and Peter, are yet living and are parties to this action. The fourth brother, Dennis, died, and the present defendant is his widow and sole devisee, succeeding to whatever title he had at the time of his death. The four children of Joseph and the surviving two brothers, Peter and William J., joined in bringing this action of ejectment against Hattie Smith, the devisee of Dennis for the recovery of the undivided three-fourths of the premises described in the writ. It is important to observe that in the præcipe for the writ express notice was given that mesne profits would be claimed from January 5, 1914.

At the trial it appears to have been conceded there was no defense as against the claim of the children of Joseph to recover the undivided one-fourth of the property and the case proceeded in order to determine whether or not William J. and his brother Peter had parted with the interests they confessedly had owned so that the same became vested in Dennis, the deceased husband of the defendant. It appears that for a considerable period before his death, Dennis had been in the actual occupation of the property and that possession was continued by his widow down to the time of the trial. The public taxes against the property had been permitted to become in arrears for a period of time and in an amount not shown by the record. Because of the default of the owners in the payment of these taxes, the property was put up to be sold by the sheriff. The defense set up is that the two surviving brothers, now parties plaintiff, entered into a parol agreement with their brother Dennis that they would sell to him their undivided shares for the purchase price of $333.33 for each share. It is alleged that in order to carry out this arrangement it was agreed the sheriff should proceed with the sale; that Dennis should become the buyer and take title, and then pay to his two brothers the purchase money already indicated.

The property was sold and Dennis bought it, took the sheriff's deed and kept possession of the property until the time of his death. There is not a particle of evidence to show that he ever paid a single cent of the purchase money. This was the situation at the time the case was tried.

Now it is conceded that the sale by the sheriff, in and of itself, to one of the tenants in common, could not and did not divest the title of his cotenants. If that title has ever been divested, it must have been because of the parol arrangement already referred to. Parol agreements for the sale of land are forbidden by the statute of frauds. Certain exceptions to the universal operation of that principle have been recognized in cases where the enforcement of the letter of the law would create a fraud rather than prevent one. Neither the industry of counsel nor any independent research made by the court has disclosed any case where a parol agreement for the sale of land was recognized or upheld in the absence of any payment of the purchase money alleged to have been agreed on or any change in the possession taken in pursuance of the agreement. The record here shows that neither one of these two fundamental requisites exists in this case. The difficulty that would arise under such circumstances, even between strangers, becomes about insurmountable when the transaction is between tenants in common: Galbreath v. Galbreath, 5 Watts 146; Workman v. Guthrie, 29 Pa. 495; Hill v. Meyers, 43 Pa. 170, and Lincoln v. Africa, 228 Pa. 546.

But it is urged that even if, under the circumstances existing here, the alleged parol agreement was not sufficient to carry the title of his two brothers to Dennis, it was sufficient to estop them against any attempt to enforce their title as against the party to whom they had agreed to sell it. We can discover nothing convincing in this argument. The situation was known to all of the parties and if there was any difference between them, it appears the advantage would be in favor of Dennis, who

was in the real estate business and who had been looking after the interests of his brothers. Not only therefore did all of them have equal knowledge, but there is no particle of evidence that Dennis was misled to his injury by anything his brothers did or omitted to do. If they did agree with him he might have their interests for the purchase price already referred to, he paid no portion of it whatever and was in no worse or no different condition upon their failure to convey than he was before the alleged promise was made. Under such circumstances we, are unable to see any foundation for, a successful defense resting on the defense of estoppel.

At the conclusion of the trial the learned judge submitted to the jury certain questions of fact as to the existence of the alleged parol promise to sell at the price stated. The jury found a verdict in favor of the children of Joseph Smith, deceased, to the extent of an undivided one-fourth and fixed their share of the mesne profits in dollars and cents. As to the two surviving brothers, Peter and William, they found a verdict in favor of the defendant. Afterwards, upon consideration of a motion for judgment n. o. v. for the plaintiffs, the court below was convinced there was no evidence that was sufficient to justify a submission to the jury of the question of the alleged parol sale or agreement to sell, and entered a judgment in favor of these two plaintiffs for an undivided one-fourth each and then awarded a new trial "for the purpose of determining the amount, if any, of damages due and payable by the defendant to the said William J. and Peter S. Smith in the nature of mesne profits for the detention of the land." This leaves the entire record in an anomalous situation likely to be provocative of trouble in the future. As long ago as Boyd v. Cowan, 4 Dallas 138, it was held that mesne profits could be recovered in ejectment by way of damages. Later on the question arose whether such recovery could be had in the absence of a notice that the plaintiff intended to prove on the trial and seek recovery for mesne

profits by way of damages. It was always held that after such notice, his right to recover was complete if he succeeded in establishing his title and right to possession. We have noted that in the præcipe for the writ the plaintiffs in this case gave such notice. The recovery of the mesne profits, if any due them, therefore became as much a part of their cause of action as the recovery of the possession of the land itself. Now the action of the court below seems to have split in two the cause of action of the plaintiffs. He has entered a judgment establishing their right to the possession but has granted a new trial of the case (and there was but one) for the sole purpose of trying out and determining the remaining portion of the plaintiff's cause of action. We know of neither principle nor authority that would support such a ruling. The learned trial judge seems to have proceeded on the theory that because a plaintiff in ejectment ordinarily could bring a separate action of trespass for mesne profits, that might be considered an entirely separate cause of action and that therefore he was at liberty to split the case in two, enter a final judgment as respects the title and possession, and proceed to a new trial for the single purpose of ascertaining the damages or mesne profits, if any, due to the plaintiffs. Two difficulties, it seems to us, became at once apparent. A separate action for the recovery of mesne profits is in trespass. To maintain such an action the plaintiff therein must have been in possession of the premises at the time he issued the writ; or, since the Act of 1879, before he could proceed to trial. Here we have two plaintiffs who are out of possession although they have a verdict and judgment which later on would result in restoring them to the possession. In Caldwell v. Walters, 22 Pa. 378, in a contest between tenants in common, Jean Walters had recovered in an action of ejectment an undivided one-sixth part of the land in controversy. She brought an action of trespass for mesne profits without having been put in possession either by writ or entry. The trial judge charged the

jury that a verdict and judgment in ejectment were con-
clusive evidence of the plaintiff's right of action and that
actual possession, since the recovery, was not necessary
in order to maintain the action. In reversing the judg-
ment BLACK, C. J., said: "When another person has the
actual occupancy the exhibition of a paramount title is
not sufficient to sustain trespass, either against the dis-
seisor or against anybody else. The right of the true
owner to the use and profits of the land is suspended
until he regains possession either by an entry or under
a legal judgment."

There is another unnecessary difficulty raised by the
situation in which the record now stands. A judgment
is the end of the controversy between the parties. Every-
thing litigated under the pleadings, and indeed every
question that should have been tried and determined
upon the issues raised, is presumed to have been deter-
mined. The judgment, resulting from the trial, might
well be pleaded as a former recovery to prevent further
litigation of what was fairly in issue in the proceeding
which ended with the judgment. Now when the plain-
tiffs gave notice in their præcipe that they sought to
recover not only the undivided three-fourths of the land
but the same share of the rents, issues and profits that
had accrued since 1914; and when the defendant entered
her plea of "not guilty," the subject for litigation and
determination was not merely the right of possession of
the land but as well the amount of mesne profits, if any,
that would follow a wrongful detention of it from the
true owners. It is easy to conceive of situations where
the plaintiff, especially in cases of tenants in common,
might be entitled to recover possession of the land and
yet could show no right to recover any mesne profits at
all. It is because of these considerations that we have
determined to set aside the judgments entered and send
the entire case back for a retrial so that the jury may
render a proper verdict and a judgment may be entered
thereon which will leave no room for further contro-

versy.  If, upon such trial, the evidence of the alleged parol sale goes no farther than it did at the former trial, we think it would be the duty of the trial judge to instruct the jury that the defense had failed and to direct a verdict for the plaintiffs for the undivided three-fourths of the premises described in the writ, leaving to the jury the ascertainment of the amount of the mesne profits, if any, due, and thus the entire question can reach a conclusion free from any disturbing elements of the nature of those we have been considering.

The judgment is reversed and a venire facias de novo awarded.