## Iwankow, Admrx., Appellant, v. Colonial Life Insurance Company of America.

Argued October 9, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

Before GLASS, J., without a jury.

*Maurice G. Weinberg,* for appellant.

*Kendall H. Shoyer,* with him *Frederick J. Shoyer,* for appellee.

OPINION BY RHODES, J., December 11, 1935:

The plaintiff, Mary Iwankow, administratrix of the

estate of Stephen Iwankow, deceased, brought an action in assumpsit against the defendant, The Colonial Life Insurance Company of America, to recover on a policy of insurance issued to her husband on December 12, 1927. The case was tried before GLASS, J., without a jury, who found for the plaintiff, in the amount named in the policy. Defendant filed motions and reasons for new trial and for judgment in its favor n. o. v., both of which motions were dismissed. Plaintiff entered judgment on the finding on February 5, 1935. On February 28, 1935, the defendant filed a petition for rule to show cause why the judgment entered should not be opened. On April 8, 1935, the said rule was made absolute, and the motions for new trial and for judgment n. o. v. were reinstated. On the same day, the motion for the new trial was granted, and the motion for judgment n. o. v. was dismissed. The plaintiff has appealed.

The judgment was opened because the court in banc was of the opinion that the case at bar was controlled by Mitchell v. Alta Life Insurance Co., 116 Pa. Superior Ct. 490, 176 A. 785. The appellant also states that the only question involved on this appeal is whether or not the Mitchell case, supra, completely and adequately controls the instant case.

The life insurance policy on which suit was brought contains the following provisions:

"C. Alterations and Waivers.—This Policy contains the entire agreement between the Company and the Insured and the Holder and Owner hereof. Its terms cannot be changed or its conditions varied, except by a written agreement, signed by the President, one of the Vice-Presidents, or the Secretary of the Company. Therefore, Agents (which term includes Managers and Assistant Managers) are not authorized and have no power to make, alter or discharge contracts, waive forfeitures, or to receive premiums on

Policies in arrears more than four weeks, or to receipt for the same in the Premium Receipt Book belonging with this Policy, and all such arrears given to an Agent shall be at the risk of those who pay them and shall not be credited upon the Policy, whether entered in the Premium Receipt Book or not.

"D. Grace Period.—A grace of four weeks shall be granted for the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the weeks of grace, the overdue premiums shall be deducted from the amount payable hereunder, but neither this concession nor the acceptance of any overdue premiums shall create an obligation on the part of the Company to receive premiums which are in arrears over four weeks. After the expiration of the said period of grace the Company's liability under this Policy shall cease, except as herein provided. ......"

"F. Revival of Policy.—If this Policy lapse for the nonpayment of premium it may be revived, if not more than fifty-two premiums are due, upon payment of all premiums in arrears, provided evidence of the insurability of the Insured satisfactory to the Company be furnished, but such revival shall not take effect unless at the date thereof the Insured is living and in sound health."

A weekly premium of twenty-five cents was payable. These premiums were paid up to and including the week of September 28, 1931. No premiums were thereafter paid until December 31, 1931. On that day, a niece of the insured called at the office of the defendant company, in Philadelphia, and paid the cashier $3.25, being the premiums for thirteen weeks. For the premiums so paid, the cashier gave a policyholder's temporary receipt, which provided: "Under no circumstances will the Company be liable under said Policy in case of death, unless the aforesaid payment shall

have been subsequently entered in the Premium Receipt Book belonging with this Policy and this receipt surrendered at the same time to the Manager or Assistant Manager." This sum was never returned to the plaintiff by the defendant company; nor was the temporary receipt returned and payment of premiums entered in the premium receipt book. The insured died on January 6, 1932, six days after the payment of the last premiums, as the result of a fractured skull sustained by him in falling out of a window on the fourth floor of a hospital.

On Saturday, January 2, 1932, Louis Novick, an agent for the defendant company, called at the home of the insured. He testified that he found the insured in bed, and that the plaintiff advised him that her husband was sick, and that he had had a doctor. He testified that he called to have the insured sign the papers necessary for reinstatement. He did not talk to the insured, although he was in the house for half an hour, but did see the insured in bed in the adjoining room. He left with the understanding that the plaintiff was to notify him, or the company, when her husband, the insured, was better, and that thereupon he would come back and put through a reinstatement.

The plaintiff testified that Novick was in her house on Saturday, January 2, 1932, but that her husband, the insured, was out at that time; that Novick stayed about ten minutes; and that he did not talk about an application to revive the policy. The plaintiff further testified that on December 31, 1931, and January 1, 1932, her husband's health was fine, but on January 2, 1932, he complained of a cold, although he had been out all day, and that night he went to the hospital.

The defendant took the position, at the trial, that, the policy having been lapsed in accordance with its terms for the nonpayment of premiums, it was necessary for the plaintiff to prove that the policy was revived, in

accordance with the terms thereof, prior to the death of the insured, in order to sustain a verdict or finding for the plaintiff.

We are of the opinion that the action of the court below in opening the judgment entered on its finding, on the ground that the rule of law applicable to the case at bar is set forth in the Mitchell case, supra, was correct.

The policy, having lapsed for the nonpayment of premium, could be revived, under its terms, (a) if not more than fifty-two premiums were due, (b) upon payment of all premiums in arrears, (c) if evidence of the insurability of the insured satisfactory to the company be furnished, (d) if the insured were living and in sound health. If, upon a new trial, the plaintiff can present such proofs, she is entitled to recover. On the other hand, if she is unable to show that there was a compliance with the provision that the insured produce evidence of his insurability satisfactory to the defendant, then she cannot recover. The burden is on the plaintiff to make out a prima facie case showing that the policy had been revived. Mitchell v. Alta Life Insurance Co., supra.

The appellant contends that the action of the defendant company, in accepting the premiums as it did, waived the provision of the policy requiring the insured to furnish evidence of insurability satisfactory to the company in order to revive the policy.

The record before us does not show any fact or facts from which it might be inferred that the defendant waived its right to a compliance with the conditions precedent to the revival of the policy, by conditionally accepting payment of the premiums on December 31, 1931. The record is barren of any satisfactory evidence having been submitted by the insured, to the defendant company, of his insurability. The acceptance of premiums by the defendant, under the

policyholder's temporary receipt, and under the facts shown at the trial, did not constitute a revival of the policy. See Riebel v. Prudential Insurance Company of America, 319 Pa. 24, 179 A. 447; Geha v. Baltimore Life Ins. Co., 110 Pa. Superior Ct. 236, 168 A. 525.

We find no error in the court's granting defendant's motion for new trial. "The law applicable, in an appeal from an order granting a new trial, is well stated in an opinion of the Supreme Court in Marko v. Mendelowski, 313 Pa. 46, 169 A. 99, as follows: 'We have frequently said we will not reverse an order awarding a new trial unless a palpable abuse of discretion on the part of the trial judge is disclosed or unless an erroneous rule of law, which in the circumstances necessarily controls the outcome of the case, is certified by the trial judge as the sole reason for his action: Class & Nachod Brewing Co. v. Giacobello, 277 Pa. 530; Loftus, Admr. v. Miners National Bank, 308 Pa. 362; Krenitsky v. Kelly, 309 Pa. 234' ": Engel v. Werner, 117 Pa. Superior Ct. 498, 499, 178 A. 162, 163.

The court below, in its opinion stating its reasons for granting a new trial, said: "Inasmuch as the policy upon which suit was brought has a paid-up value, a new trial was granted for the sole purpose of determining that paid-up value at the time of the death of the insured, which sum only the plaintiff would be entitled to recover, and no more." However, the new trial should be granted generally, and should not be limited to special issues. See Smith et al. v. Smith, etc., 77 Pa. Superior Ct. 227, 233. When the court below granted the motion for a new trial, the case was restored to the status it had before any trial took place, and it is fully opened to be tried de novo. See Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Lynch, 308 Pa. 23, 28, 162 A. 157, 159.

Any limitation of the order granting a new trial is struck off. With this modification, the order of the court below is affirmed.