## Reed v. The Patriot Company

*James A. Walker*, for plaintiff.

*Hause, Evans, Storey & Lick* and *J. Dress Pannell*, for defendant.

SHEELY, P. J., specially presiding, March 22, 1939.— This is an action in trespass for libel. Plaintiff's declaration alleged eight separate causes of action or counts, five of which were based upon editorials appearing in The

Patriot during the 1936 campaign for the election of a State senator; one upon a news article in The Evening News during the same campaign; and two upon news articles in the same paper during the judicial campaign of 1937. The jury returned a verdict in favor of plaintiff for $10,000 and made special findings in which it found defendant "not guilty" on seven of the alleged libels, but "guilty" of libel as to the news article appearing in The Evening News during the senatorial campaign of 1936. Both plaintiff and defendant filed motions for a new trial, but at the oral argument plaintiff withdrew his motion. We have before us, therefore, defendant's motion for a new trial limited to the count of the declaration upon which it was found guilty.

Plaintiff in 1936 was a candidate for reëlection to the office of State senator and his reëlection was opposed by defendant company in its two newspapers, The Patriot and The Evening News. On October 23, 1936, the Governor made a campaign speech at a Democratic rally and, in the course of his speech, urged that plaintiff be defeated for reëlection because of his alleged defense of Senator McClure of Delaware County, to whom he referred as the "convicted head of the Delaware County rum and vice ring." In its issue the following day, October 24, 1936, The Patriot reported that, "The Chief Executive charged Reed with defending Senator McClure of Delaware County after he had been convicted of heading a ring of bootleggers and gamblers and proprietors of houses of vice." On the same day an article appeared in the first edition of The Evening News that, "Earle waded into Senator George L. Reed, Republican candidate for another term in the Senate, as the head of the Delaware County rum and vice ring." Defendant offered testimony to show that as the copy was written the article should have read: "Earle waded into Senator George L. Reed, Republican candidate for another term in the Senate, as the defender of McClure, convicted head of the Delaware County rum and vice ring." As the

article was set in type the words, "defender of McClure, convicted" comprised one line and, due to a failure of the space bands to tighten when the article was completed, this line was inadvertently dropped. A proof of the article as set in type was sent to the proof room but the "dropped line" was not discovered, and the article with the line missing was carried into the first edition.

The error was discovered after the first edition had been circulated and was corrected by inserting the dropped line in the remaining five editions issued on that day. In the fifth and sixth editions an apology or explanation entitled "correction" was printed on the front page, in which the error of the first edition was explained and corrected. The same correction was printed in the first four editions of Monday, October 26, 1936, in order to reach any persons who might have read the first edition of October 25th and failed to read the subsequent editions. The total circulation of the six editions of October 24th was 70,295, but defendant was unable to give the figures for each of the editions. The press run of the first edition, however, was 15,550 papers, and it was explained that, with the exception of "street sales" in the City of Harrisburg, the entire first edition was sent to points some distance from Harrisburg in order to reach subscribers on the date of issue.

It is at once apparent, from a mere recital of these facts, none of which was disputed by plaintiff, that the publication was not made maliciously and that the important line was omitted by accident or negligence. This was the express finding of the jury which, in addition to finding defendant guilty on this count, added to its verdict an explanatory note that it believed the omitted line "to be caused by negligence on the part of certain several employes of The Evening News, a publication of The Patriot Company." The jury was not only justified in finding a verdict in favor of plaintiff on this count, but a contrary verdict probably could not have been sustained.

Defendant's motion for a new trial is confined largely to a question of the excessiveness of the verdict of $10,000.

The right of the court to grant a new trial in a libel suit because of an excessive verdict cannot be doubted. This question was fully considered in Smith v. The Times Publishing Co. et al., 178 Pa. 481 (1896), and it was there said (p. 501), referring to the power of the courts to control and revise excessive verdicts: "This court has had occasion more than once recently to say that it was a power the courts ought to exercise unflinchingly." In the later case of Boyer v. Pitt Publishing Co., 324 Pa. 154, 160 (1936), it was held that where a verdict in a libel case is inordinately out of proportion to either plaintiff's injury or defendant's offense, justice may demand a substantial abatement. In Weglein v. Golder, 317 Pa. 437, 441 (1935), it was held that the verdict should prevail unless grossly excessive.

Generally speaking, it is the duty of the court to give plaintiff an opportunity to accept a reduction of a verdict, or a new trial, where the amount of the verdict is so excessive as to offend the court's sense of justice: Gail v. Philadelphia, 273 Pa. 275; Hoon v. Beaver Valley Traction Co., 204 Pa. 369. In 20 R. C. L. sec. 66, quoted with approval in Cover, etc., v. Hershey Transit Co., 30 Dauph. 213, it is stated:

" 'The general rule is that a verdict should not be disturbed in such a case, unless the damages are so excessive as to strike one, at firsh blush, as unreasonable and outrageous, and such as manifestly show that the jury acted under the influence of a prejudice or passion, or under a clear misapprehension of their duty and the facts of the case. It is not enough that, in the opinion of the Court, the damages are too high.' "

The means taken by defendant to correct the erroneous story would not excuse it from liability for making a totally untrue statement about plaintiff in its first edition of October 24th but these facts must be

considered in mitigation of damages. Under these facts and with no evidence of malice, the verdict of the jury strikes us as being entirely unreasonable and outrageous and as showing that the jury acted under the influence of prejudice or passion or under a clear misapprehension of their duty or the facts of the case. It is unnecessary to speculate whether the amount of the verdict was the result of the alleged inflammatory remarks of plaintiff's counsel in his closing argument to the jury or of the alleged error of the court in affirming defendant's third point for charge. The fact that the verdict is excessive is of itself sufficient to require a new trial.

A more difficult question presented is the amount which plaintiff should be required to remit as an alternative to accepting a new trial. There is no yardstick or gauge by which damages resulting from a libel can be measured, nor do decided cases aid materially because the result in each case necessarily depends upon its own peculiar facts. In Smith v. The Times Publishing Co. et al., supra, an action by an ex-office holder against the publisher of a newspaper which charged plaintiff with cowardice and financial irregularities, a verdict for $45,000 was held to be disproportionate to defendant's offense and was set aside generally and a new trial awarded. In Weglein v. Golder, supra, the publication charged plaintiff, an officer of a bank, with having committed the specific crime of taking deposits at a time when he knew the bank to be insolvent, and openly invited prosecution for libel. The libelous article was sent to certain newspapers for publication and was also delivered over the radio. A verdict for $5,000 was allowed to stand. In Chambers v. Philadelphia Inquirer, 14 D. & C. 421 (1925), defendant, with a circulation of about 280,000, had published a partially untrue statement about plaintiff. A verdict for $9,000 was reduced to $4,500. In Stompler v. Richman, 125 Pa. Superior Ct. 385 (1937), a verdict of $1,500 in favor of an un-

married woman 45 years of age was held not excessive for a libelous statement imputing immoral relations.

The case most nearly similar to the present case is Boyer v. Pitt Publishing Co., 324 Pa. 154 (1936). There, defendant publishing company charged plaintiff with having changed his testimony in a trial which attracted considerable attention, leaving an impression that the change was wilful and corrupt rather than an innocent failure of recollection of his previous testimony. There was no evidence of actual malice and no proof of special damages, and in publications several days after the appearance of the libelous article defendant published articles which were substantially a retraction of any previous imputation of deliberate falsehood. The court held that a verdict of $6,000 should be reduced to $2,500.

No mathematical calculation of the damages to which a plaintiff should be entitled, based on the circulation of defendant's publication, is possible. Reliance upon the untrue statement by one person might damage plaintiff substantially even though the total circulation were small. On the other hand, it is possible that even with a large circulation no one would rely upon the false statement and plaintiff would not be injured to any extent. The jury might have considered a nominal verdict sufficient in this case as a vindication of plaintiff from the untrue statement made against him, but the verdict indicates the contrary. We have, therefore, fixed the sum of $2,500 as the amount to which the verdict should be reduced if a new trial is not to be had.

The question then arises whether a new trial can be granted as to count no. 5 (plaintiff's exhibit no. 8) alone and judgment entered on the verdict as to the other counts, or whether the granting of a new trial must be as to all eight counts.

Plaintiff has withdrawn his motion for a new trial as to the seven counts on which a verdict of "not guilty" was entered but insists that if a new trial is granted as to count no. 5 (plaintiff's exhibit no. 8), it must

include a new trial on all of the counts. As the record stands, however, there is no complaint either as to the conduct of the trial or the verdict of "not guilty" as to the seven counts. Under these circumstances, we can see no reason why the seven counts should be retried in order to correct the excessive verdict on one count, and, if possible, would enter judgment on the verdict for defendant as to those counts, and limit the new trial to the one count.

There are comparatively few cases in Pennsylvania in which the question of the right to enter judgment for part of a verdict has arisen. Where a joint action is brought by husband and wife under the Act of May 8, 1895, P. L. 54, the court may grant a new trial as to one party, and enter judgment on the verdict as to the other party: Rhodes et ux. v. General Credit Corp., 28 D. & C. 680 (1937); Albertson et ux. v. Gordon, 27 Dist. R. 770 (1918). In this situation, however, the statute requires that the actions be joined but that separate verdicts be rendered and separate appeals taken: Rinker v. Colonial Iron Co., 68 Pa. Superior Ct. 258; Donoghue v. Consolidated Traction Co., 201 Pa. 181. The rights of action are distinct but the suits are consolidated for convenience and economy.

Where an obligation is joint and not several, a verdict in favor of one plaintiff only cannot be sustained even as to that plaintiff, but a new trial must be granted of the entire case, as the recovery must be joint or not at all: Myers et ux. v. Plummer, 21 D. & C. 12 (1934).

In Pennsylvania Co., etc., v. Lynch, 308 Pa. 23 (1932), defendant was sued upon five collateral notes and filed a counterclaim against plaintiff claiming damages for plaintiff's failure to dispose of the collateral when directed by defendant. A verdict in favor of defendant generally was returned, but without finding any amount. The judgment granting a new trial on defendant's motion was affirmed, and plaintiff's motion for judgment n. o. v. was

not considered, the court saying (p. 28) : "A new trial being ordered, the case is, of course, restored to the status it had before any trial took place and is fully open to be tried de novo." The question of granting a new trial as to part of the issues was not involved and the statement quoted was made as an explanation of why plaintiff's motion was not passed upon.

In Smith et al. v. Smith, etc., 77 Pa. Superior Ct. 227 (1921), three cotenants joined in bringing an action in ejectment and for mesne profits against the fourth cotenant. The jury returned a verdict in favor of one cotenant for an undivided one-fourth interest in the real estate and fixed his share of the mesne profits in dollars and cents, but as to the other two plaintiffs returned a judgment in favor of defendant. The lower court entered judgment n. o. v. in favor of the latter two plaintiffs and ordered a new trial for the purpose of determining the amount, if any, of damages due to those plaintiffs as mesne profits. This judgment was reversed and a new trial granted as to the entire case, the court assigning two reasons for its action: First, while plaintiff could have brought an action in ejectment and a separate action in trespass for mesne profits, by claiming mesne profits in his ejectment action he made that claim a part of his cause of action, and a cause of action cannot be split for the purpose of granting a new trial as to a part only; second, a judgment is presumed to determine everything litigated under the pleadings and every question that should have been tried and determined upon the issues raised, and a judgment arising from trial might well be pleaded as a former recovery to prevent further litigation of what was in issue in the proceeding which ended with the judgment.

In Iwankow, Admx., v. Colonial Life Insurance Company of America, 120 Pa. Superior Ct. 114 (1935), which was an action upon a life insurance policy, the lower court granted a new trial for the purpose of determining the paid-up value of the insurance policy at

the time of the death of the insured. The order granting the new trial was affirmed but the portion of the order limiting the new trial to one issue was stricken off with the statement (p. 120) : "However, the new trial should be granted generally, and should not be limited to special issues", citing Smith et al. v. Smith, etc., supra, and Pennsylvania Co., etc., v. Lynch, 308 Pa. 23.

In Campbell v. National-Ben Franklin Fire Ins. Co., 123 Pa. Superior Ct. 274 (1936), the action was based upon two policies of fire insurance covering a dwelling house and the contents thereof. A verdict for defendant was directed as to the claim for the loss of the building, and a verdict was returned in favor of plaintiff for the loss of the contents. Plaintiff's motion for a new trial for the loss of the building was refused, and defendant's motion for a new trial restricted to the question of the loss of the contents was granted. This action was reversed, the Superior Court stating (p. 276) :

"The effect of the court's granting a new trial on motion ex parte defendant was to grant a new trial for the entire action and without limitation. When a new trial is granted, it means a new trial in toto. A new trial could not be granted by the court below to retry one of the issues arising on the original trial": Iwankow, Admx., v. Colonial Life Insurance Company of America, supra; Smith et al. v. Smith, etc., supra, and Pennsylvania Co., etc., v. Lynch, supra, were cited as authority.

In Schofield v. Schofield, 124 Pa. Superior Ct. 469, 480 (1937), an action of assumpsit was brought upon a contract containing two separate promises. The court below, trying the case without a jury, entered judgment for plaintiff as to the one promise and in favor of defendant as to the other. Both parties appealed, and the Superior Court held that the trial court had erred as to the judgment in favor of defendant, and ordered a new trial, saying:

"As the ultimate outcome of this branch of the case is dependent upon the finding of fact . . . the case will have to go back for a retrial; and this necessarily requires a new trial of the whole case. While the plaintiff is entitled to a finding or verdict as respects the $1120 which defendant acknowledged owing her, there cannot be two separate verdicts or judgments in one action in assumpsit. The grant of a new trial means a new trial of the whole case: *Iwankow v. Colonial Life Ins. Co.*, 120 Pa. Superior Ct. 114, 181 A. 870; *Campbell v. National-Ben Franklin Fire Ins. Co.*, 123 Pa. Superior Ct. 274, 187 A. 217."

In all the cases above reviewed there was but a single cause of action. In none of the cases, except Smith et al. v. Smith, etc., supra, was a reason given for the statement that a new trial must be a new trial of all the issues raised in the pleadings. Confining the decisions to the facts of the particular cases, these cases are authority for the proposition that a single cause of action cannot be split so as to grant a new trial as to one of the issues involved in the case. The cases cannot be considered direct authority for the proposition that a new trial cannot be granted as to a single cause of action where several causes of action are joined in one suit, because that question was not involved.

None of the cases reviewed either cites or distinguishes Bailey v. C. Lewis Lavine, Inc., et al., 302 Pa. 273 (1931), in which plaintiff sued several defendants as a result of an automobile accident alleged to have been caused by their concurrent negligence. A verdict was returned against two defendants. The court subsequently refused Lavine's motion for judgment n. o. v. and for a new trial and entered judgment against that company on the verdict, but granted a new trial to the Rolls-Royce company. The Supreme Court held (p. 277):

"Where the cause of action is joint and several, a trial court may enter judgment on a joint verdict against one defendant and grant a new trial as to the other. As plain-

tiff, in the instant case, might have brought her suit against appellant only, so she might have discontinued the action against the Rolls-Royce at any time. She should not be put to the delay, expense and hazard of another trial because of the court's action as to the codefendant." The court relied upon Samuels & Brother v. Superior Ct., 41 R. I. 100, L. R. A. 1918C 967, Moreland, Inc., v. Durocher et al., 121 Mich. 398, 80 N. W. 284, and Albright v. McTighe et al., 49 Fed. 817.

This case would seem to be contrary to the rule expressed in Smith et al. v. Smith, etc., supra, and Schofield v. Schofield, supra, that there cannot be separate verdicts or judgments in one action, but would not be inconsistent with the rule that a single cause of action cannot be split for the purpose of granting a new trial as to a part only. Upon the latter theory all of the cases can be fully explained and distinguished.

Every reason given for the decision in the Bailey case applies in the instant case. Plaintiff might have brought a separate action against defendant for each alleged libel: Reed v. The Patriot Co., 45 Dauph. 10 (1937), citing Newell on Slander & Libel, sec. 434. He might have discontinued the suit as to any cause of action at any time. Defendant here should not be put to the delay, expense, and hazard of another trial on the eight causes of action because of the court's action as to one cause of action. In addition, the court might have granted defendant's motion for a compulsory nonsuit or for binding instructions as to the seven causes of action, in which event plaintiff would have been in precisely the same position as at present. In fact, at the argument on defendant's motion for a compulsory nonsuit and for binding instructions the court felt that the question of its right thereto was very close, but determined to submit the issue to the jury for its determination of the facts.

There is ample authority in other jurisdictions for this view. In 46 C. J. sec. 24, p. 74, it is stated: "Where there

are distinct counts and causes of action and separate findings, there may be a new trial as to a part only of such causes." In Simmons v. Fish, 210 Mass. 563, 97 N. E. 102 (1912), a new trial in an action of trespass for personal injuries was limited to the question of damages. The court there pointed out that the limiting of a new trial to specific points was a part of the inherent judicial authority, and was not made under any statute. The guiding principle was stated to be that, although a verdict ought not to stand which is tainted with illegality, there ought to be but one fair trial upon any issue, and that parties ought not to be compelled to try anew a question once disposed of by a decision against which no illegality can be shown. The case of Barnett v. Loud, 243 Mass. 510, 137 N. E. 740, involved one count in libel, one in slander, and one in malicious prosecution. A new trial was granted as to all, but an appeal was taken to determine whether the verdict could have been separated and a new trial granted as to one only. The Supreme Judicial Court held that the verdict was not supported by the evidence as to any count but: "It was the common-law conception of a verdict that it was single and indivisible." It still is not uncommon to refer to a verdict as an entity which must stand or fall as a whole. The modern practice has widely extended the joining of several counts for distinct causes of action in civil matters in a single action and for different crimes of the same general nature in a single indictment in criminal matters. It is, therefore, as a matter of law, possible to set aside verdicts as to one or more counts and leave undisturbed verdicts as to other counts. A verdict as to one count may be vitiated for some error, and stand as to other counts. In Holland v. Hall, 3 Dom. L. R. 722 (1912), plaintiff recovered a general verdict as to five alleged slanders, but on appeal it was held that four of the five were not actionable and a new trial granted as to the fifth count only. The same rule was applied as to contracts in Eggert v. Kullman et ux. et al., 204 Wis. 60, 234 N. W. 349

(1931), White Oak Coal Co. v. Squier Co. (Mo. App. 1920), 219 S. W. 693 (1920), and Wold et al. v. League of Cross, etc., et al., 107 Calif. App. 344, 290 Pac. 460 (1930).

In Calaf et al. v. Fernandez, 239 Fed. 795, 799 (1917), the Circuit Court of Appeals for the First Circuit in ordering a new trial limited in scope said: "The practice of not going over unnecessary grounds which at the end of the first trial and the verdict are found not to involve substantial dispute, and trying again questions that are not in substantial controversy through the instrumentality of a new trial, granted in the exercise of discretion, is a salutary one, and the authorities and the textbooks sufficiently sustain it." See also Rule 59 of the New Federal Rules of Practice.

We can see no distinction between granting a new trial of a single cause of action which is entirely severable from the other causes of action declared upon, and the granting of a new trial to one defendant, which was done in Bailey v. C. Lewis Lavine, Inc., et al., supra. The justice of this procedure is clear if we imagine a case involving 100 separate causes of action in which the verdict was erroneous as to one count. There certainly can be no reason for requiring a new trial of 99 causes of action which have been finally determined and as to which there are no substantial objections in order to arrive at a correct conclusion on the one.

And now, March 22, 1939, defendant's motion for a new trial limited to the issues raised in count no. 5 (plaintiff's exhibit no. 8) is granted and judgment is directed to be entered on the verdict in favor of defendant as to the other seven counts unless plaintiff shall, within 15 days of the filing of this order, file a stipulation remitting $7,500 of the verdict. Upon the filing of such stipulation and payment of the jury fee, judgment is directed to be entered on the verdict for the amount of $2,500.