365 A.2d 1305

Jean Francis STOKAN, a minor, by her parent and natural guardian, Michael R. Stokan, et al.

v.

James TURNBULL, Appellee,

v.

Agnes STOKAN, Appellant.

Superior Court of Pennsylvania.

Argued April 14. 1976.

Decided Nov. 22, 1976.

Application for Allocatur Granted March 18, 1977.

442

Charles Kirshner, Pittsburgh, for appellant.

Raymond H. Conaway, Pittsburgh, Walter Faderewski, McKeesport, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge.

This appeal arises from an action to recover damages for personal injuries and property damage arising from an automobile accident which occurred June 18, 1971, at the intersection of Routes 30 and 48 in North Versailles Township, Allegheny County. Route 30 is a four lane highway running in an easterly and westerly direction at its intersection with Route 48, while the latter is an intersecting north-south highway. The intersection is controlled by a traffic light which did not have left turn arrows. At the time of the accident, the signal was green for traffic proceeding east and west on Route 30.

Both cars were on Route 30, one driven by Agnes Stokan headed west and the other driven by James Turnbull headed east. Agnes Stokan was in the process of making a left-hand turn from Route 30 onto Route 48 when her car was struck by the approaching vehicle operated by James Turnbull.

Both cars were damaged and two passengers in the Stokan car, Jean and Maryann Stokan, younger sisters of Agnes Stokan, were injured. Maryann Stokan suffered a severe concussion which rendered her unconscious for ten days and lacerations and contusions of the face, right shoulder, right hip, right hand and left knee. Jean Stokan sustained abrasions of the arms, legs and forehead in addition to cervical pain.

According to the Stokan testimony, their car stopped at the intersection for several seconds before making its left-hand turn, the left-hand turn signal of their car

turned on. Agnes Stokan, the driver, observed the oncoming Turnbull car some 75 to 100 yards away, but noted that it was in the left-hand lane and signaling a left-hand turn. On that assurance, the Stokan car made its left-hand turn and was struck by the oncoming Turnbull car.

The Turnbull account of the accident is that as their car approached the intersection, it was being driven in the right rather than the left-hand lane and was not signaling for a left-hand turn. Turnbull testified that he was driving 40 to 42 miles an hour. Another eyewitness estimated his speed at 35 miles an hour; the legal limit was 40. Turnbull did not see the Stokan car until he was about 25 feet from the intersection. At that point in time, the Stokan car made its left-hand turn and pulled in front of the Turnbull vehicle, but Turnbull was not able to avoid the collision due to his close proximity to the Stokan car when he first observed it.

In the litigation which resulted, (a) the injured Stokan girls, by Michael R. Stokan as their parent and guardian, sued James Turnbull, driver of the oncoming car, for compensation for their injuries; (b) the parents sued Turnbull for reimbursement for medical expenses and damages; and (c) Catherine M. Stokan, the mother, sued him for damages to the Stokan car. James Turnbull named Agnes Stokan as an additional defendant and claimed reimbursement from her for damages to his car.

The jury returned verdicts (a) in favor of the parents for the exact amount of the medical bills incurred on behalf of their minor daughters ($1,735 and $45) and (b) in favor of Catherine Stokan for the property damage done to the Stokan vehicle ($800), (c) but a verdict of nothing was returned for the pain, suffering and inconvenience of the minor daughters, all awards against Agnes Stokan, but no verdict against James Turnbull. Turnbull, in turn, was awarded a verdict against Agnes Stokan for damage to his car ($966.10).

Post-trial motions followed, presented on behalf of the Stokan minor girls, their parents and Agnes Stokan, each seeking a new trial and Agnes Stokan a judgment N.O.V. as well. The court below awarded Jean and Mary-ann Stokan, acting by their father-guardian, a new trial against Agnes Stokan but not Turnbull, and limited the new trial solely to the issue of damages. Agnes Stokan's motions for a new trial and judgment N.O.V. were denied. Agnes Stokan appeals, seeking a new trial on all issues and against all parties.

It is clear that there must be a new trial. A verdict against Agnes Stokan in favor of her parents for the exact amount of the medical bills incurred on behalf of her minor sisters, but with a verdict of nothing for their pain, suffering and inconvenience is both inadequate and inconsistent. Whether the verdict is a compromise between liability and damage we have no way of knowing. It is clear, however, that there was no rational basis for a determination that the injuries were inconsequential and, consequently, not compensable. There is no testimony or contention that either of the injured girls was negligent in any way. Consequently, Jean and Maryann Stokan, acting by their father and guardian, are entitled to a new trial.

In a similar situation, it was ruled in *Pascarella v. Pittsburgh Railways Co.,* 389 Pa. 8, 13, 131 A.2d 445, 447 (1957);

"Since the jury found that the parents of Joyce Long and Mary Pascarella were entitled to reimbursement for monies expended for medical bills incurred on account of injuries sustained by their daughters, there can be no reasonable explanation for denying a return to the girls themselves for those same injuries. Once a jury imposes legal liability on a responsible party they may not wilfully or capriciously withhold payment of an item which is inextricably interwoven in the pattern of the liability."

The trial court has granted a new trial but has limited it to one against Agnes Stokan and to the single issue of damages suffered by her minor sisters. We believe the court erred in both limitations.

■ It is the normal practice in granting a new trial to grant it generally against all parties on all issues. This court stated in *Mains v. Moore,* 189 Pa.Super. 430, 434, 150 A.2d 549, 551 (1959):

"Ordinarily the grant of a new trial means a new trial generally; it restores a case to the status it had before the trial took place and is fully open to be tried de novo as to all parties and all issues: *Pennsylvania Co. for Insurance on Lives and Granting Annuities v. Lynch,* 308 Pa. 23, 28, 162 A. 157; *Iwankow v. Colonial Ins. Co.,* 120 Pa.Super. 114, 120, 181 A. 870."

■ A new trial limited to the issue of damages is the exception, not the general rule. It should not be so limited unless the issue of liability is free from doubt. In the case before us, the liability of appellant Agnes Stokan is very much contested.

In *Friedman v. Matovich,* 191 Pa.Super. 275, 280–281, 156 A.2d 608, 611 (1959), this court well summarized the limited circumstances which justify limiting a new trial to the issue of damages as follows:

"But these situations [a new trial limited to the issue of damages] are rare. To draw the line so that limiting new trials to the amount of damages becomes the general rule instead of the exception will not aid, but hinder the administration of justice. . . .

"To limit the new trial is to assume that the verdict conclusively settled the liability of the defendant. Regardless of what we may believe because of personal familiarity with similar circumstances, the fact remains that there is a direct conflict in the testimony of the parties concerning the liability of the defendant which makes the fact a disputed jury question. In the

case of a verdict of $1 it is not realistic to assume that the jury deliberately and conclusively settled the question of liability and was confused only concerning the amount involved.

" 'The court should never permit a party to an action to select for retrial the issues decided against him and upon the rehearing treat those decided in his favor as settled, when the issues are interwoven and cannot be separated without injustice to the other party.' *Reay v. Beasley,* 1937, 49 Ariz. 362, 66 P.2d 1043, 1044.

" 'The instances in which a new trial upon the issue of damages alone may be proper are comparatively infrequent. Where it appears that the verdict was the result of a compromise, such error taints the entire verdict and requires a new trial as to all of the issues in the case.' 39 Am.Jur., p. 48, § 24."

The issue of liability being a contested one, the new trial must include both issues, liability and damages.

The new trial must also include both parties defendant, appellee Turnbull as well as appellant Agnes Stokan. It will be impossible on a retrial to determine whether appellant Agnes Stokan is liable for the injuries to her sisters without determining the responsibility of Turnbull. While he appears to have been exonerated by the jury, we have no way of knowing whether there was a relationship between the exoneration of Turnbull and the inadequacy of the award to the Stokan sisters. To attempt to analyze the several facets of the jury's verdict and determine which are right and which are wrong is akin to unscrambling an egg.

A jury verdict is not put together with the logic of a lawyer's argument. It commonly and appropriately represents an overview of a layman's sense of justice. One item may be traded off for another, not necessarily in compromise but in a search for what is sensed to be

an equitable result. Consequently, a jury verdict of several components should not be taken apart item by item, some sustained and some reversed like a governor's item veto. The component parts of a multiple verdict are almost necessarily interrelated. This fact of life was well expressed in *Friedman,* supra, at pages 279–80, 156 A.2d at page 611:

"Ordinarily a jury does not apply with meticulous care a logician's syllogism to the evidence nor proceed from point to point in the fashion of a lawyer. It is unrealistic to assume that the judge's charge, filled with technical rules for the jury to follow in arriving at its verdict, is never dimmed in the jury room by the guiding light of a layman's sense of right. The jury seldom examines the evidence piecemeal with the discerning eye of a scientist, nor does it climb a logical ladder, step by step to a mathematically perfect conclusion. Jurors are more likely to view the evidence as a whole and apply their accumulated experience and combined sense of justice to arrive at a result they think fair to all the parties under all the circumstances. This is not a fault but a virtue of the jury system; it is one of the system's blessings, not one of its evils. This humanizes and tempers the cold logic which accepts no compromises and recognizes no grays. That the jury requires court supervision and its product occasionally requires judicial revision does not detract from the value of this ancient right of free people to have their disputes submitted to their peers. If the jury took a panoramic view of this case to determine the result it believed just, then limiting the retrial to a single point is unlikely to bring about a just result."

We conclude that it is impossible and inappropriate to exclude appellee Turnbull from the retrial of this case. He was one of two parties to the accident and the

situation cannot be reconstructed for a second jury without his involvement.

We note the argument that in *Amati v. Williams,* 211 Pa.Super. 398, 236 A.2d 551 (1967), a case quite similar factually to the one at bar, a new trial was limited to a determination of damages and to a single defendant. However, both cases are primarily factual situations and *Amati* lays down no rule of law for other cases that a new trial should be restricted as to issues or parties.

Such limitations would clearly be inappropriate in this case. We are dealing with what appears to have been a compromise verdict between the elements of liability and damage but we are without knowledge as to the interplay which took place between the two issues. Only a new trial involving all parties and all issues can cure the inadequacy of the multiple verdict under review.

The order of the court below granting a limited retrial is modified, and a new trial ordered against both appellant Agnes Stokan and appellee Turnbull on all issues.

JACOBS, J., files a dissenting opinion in which HOFFMAN, J., joins.

JACOBS, Judge (dissenting).

This is an appeal from an order of the lower court refusing a new trial generally and granting a new trial on the issue of damages only to the minor plaintiffs, Jean and Mary Ann Stokan against the added defendant, Agnes Stokan. The majority holds that this order was improper both in the limitation of issues to that of damages, and in its failure to include the original defendant, James Turnbull, in the new trial. I believe that the order as framed by the trial judge was proper in both respects, and, therefore, respectfully dissent.

In reviewing the decision of the trial judge to limit the new trial to the issue of damages, it is of paramount im-

portance to keep in mind the fact that "[t]he exercise of the power to grant a new trial with respect to damages alone rests in the sound discretion of the trial court." 28 P.L.E. New Trial, § 3 (1960). The case law is somewhat confusing in regards to the proper standard to be applied by the trial judge in determining whether or not liability was imposed with a sufficient degree of certainty in the first trial to warrant limitation of the new trial to the issue of damages. It appears that when a new trial is ordered due to an excessive verdict, the proper standard is whether liability was "fairly determined" in the first trial. *Roncatti v. Smereczniak,* 428 Pa. 7, 235 A.2d 345 (1967). On the other hand, a more strict standard is to be applied when an inadequate verdict is the basis for ordering a new trial, inasmuch as the inadequacy is sometimes considered to be evidence that a compromise verdict had been rendered. The test then becomes whether or not liability in the first trial was "uncontested," or "clear" and "free from doubt." *See, e. g., Gagliano v. Ditzler,* 437 Pa. 230, 263 A.2d 319 (1970).

Clearly, the issue of liability was contested during the first trial. The majority appears to say that this fact automatically requires a new trial on both the issues, liability and damages. To so hold would constitute an application of only part of the proper test, since, while liability may have been disputed, it may just as easily have been determined to be "clear" and "free from doubt" in view of the evidence presented at trial. I believe that in the interests of justice and judicial economy, the trial judge's ruling upon whether or not the first trial resulted in such a determination must be accorded great weight.

We recently stated that in cases such as the one at bar, we should defer to the trial judge's exercise of discretion to order a limited new trial, because of his ". . . superior opportunity to determine matters such as credibility, jury attentiveness, etc. . . ." *Holmes v. Wa-*

*ters,* 235 Pa.Super. 180, 182, 340 A.2d 474, 475 (1975). In that case however, the judge who ordered the limited new trial was not the trial judge,[1] and our scope of review was thus broadened. In modifying the lower court's order so as to include both the issues of liability and damages in the new trial, we stated: *"Without the benefit of being able to observe the witnesses at trial, we believe that their testimony did not free the question of negligence from doubt.* See also *Gagliano v. Ditzler,* 437 Pa. 230, 263 A.2d 319 (1970)." *Id.* at 184, 340 A.2d at 476 (emphasis added). The inescapable conclusion to be drawn from this statement is that, although liability was contested, the trial judge is in a unique position which enables him to determine that the jury's decision, based on the evidence presented, was sufficiently certain to free the issue of liability from doubt.

The majority cites *Mains v. Moore,* 189 Pa.Super. 430, 150 A.2d 549 (1959), and *Friedman v. Matovich,* 191 Pa.Super. 275, 156 A.2d 608 (1959), for the general proposition that an inadequate verdict may give cause to suspect a compromise between the issues of liability and damages, and that in the event a compromise verdict is rendered, any new trial must be granted as to both of the issues. Assuming, *arguendo,* that an inadequate verdict is some evidence of compromise, I believe that the trial judge, who viewed the entire proceedings, is in a better position than we are to rule that evidence of liability was so "clear" and "free from doubt" as to overcome any inference of compromise. *See Holmes v. Waters,* supra.

While we have at times held that the trial judge abused his discretion by granting a new trial limited to damages, we have usually done so only when the likelihood of a compromise verdict is much stronger than in the case at bar. For example, in *Mains v. Moore,* supra, in addition to an inadequate verdict, there was funda-

---

1. The trial judge, the Honorable Francis X. McClanaghan, had passed away prior to ruling on the motions for new trial.

mental error committed by the trial judge in the course of instructing the jury, which so tainted the verdict on liability that a general new trial was required. No such trial errors are alleged in the case now before us, consequently I cannot agree that the trial judge abused his discretion in determining that the jury verdict, while inconsistent as to the minor plaintiffs and their parents, was *not* the result of a compromise on the issues of liability and damage.

As the majority notes, in *Amati v. Williams,* 211 Pa. Super. 398, 236 A.2d 551 (1967), we faced a situation very similar to the case at bar. Rather than reviewing a lower court's order for a limited new trial, however, we were reviewing the refusal of a new trial and took it upon ourselves to order a limited new trial. In that case, which also arose out of an automobile collision, a verdict had been returned against the additional defendant, awarding the parents of a minor plaintiff medical expenses, but denying any recovery to the minor plaintiff for pain and suffering. As in the case now before us, verdicts were returned in favor of the original defendant. In that case, under circumstances which I am unable to distinguish from those in the present case, we ordered a new trial limited to the issue of *damages* only, against the *added defendant only.* Obviously, we did not believe that the inconsistent verdict against the added defendant was sufficient indication that the jury had compromised the issues of damages and liability. I simply cannot agree that the trial judge in the present case, having had the added benefit of observing the entire trial, can be said to have abused his discretion by making the same ruling that we made in *Amati v. Williams,* supra. In view of the clear verdicts in favor of the defendant and against the additional defendant, I believe that the jury conclusively settled the issue of liability. Thus I would affirm the order limiting the new trial to the issue of damages.

In addition to ordering a general new trial against Agnes Stokan, the majority has declared that James Turnbull is to be included in that new trial. I must register my dissent to that portion of the majority opinion also.

James Turnbull, the original defendant in this case, was fully and unequivocably exonerated by the jury, and to require him to bear the burden and expense of a second trial is a serious injustice. The trial judge did not abuse his discretion in limiting the new trial to one against Agnes Stokan, in fact, in my judgment, quite the contrary is true. Our Supreme Court has held that absent trial error which casts serious doubt on the jury verdict, when one defendant gets a favorable verdict, it may be an abuse of discretion to grant a new trial as to *both* defendants, merely because an inadequate verdict was returned aainst the losing defendant. *Greco v. 7-Up Bottling Co. of Pgh.*, 401 Pa. 434, 165 A.2d 5 (1960); *Sternberg v. Dixon*, 411 Pa. 543, 192 A.2d 359 (1963).

Even if the new trial against Agnes Stokan is on both the issues of liability and damages, Turnbull should nevertheless be excluded. The fact that in such a situation, the jury could conceivably exonerate Agnes Stokan, thereby precluding any recovery whatsoever by the plaintiffs, is not a valid reason for depriving Turnbull of his favorable verdict. *Fitzpatrick v. Sheppard*, 346 Pa. 240, 29 A.2d 475 (1943). I would hasten to add that, contrary to the majority's view, I fail to see why Turnbull's absence as a party defendant in the second trial would make it impossible to reconstruct the accident situation for the jury.

While the majority acknowledges the fact that Turnbull "appears" to have been exonerated by the jury verdict, they seem to say that a verdict rendered by a jury of laymen is such a twisted and tangled mass that no single portion of the verdict can stand alone. I do not accept this argument, since I cannot conceive of any man-

ner in which the jury could have been more definitive in its decision concerning the liability of Turnbull. Not only did the jury return a favorable verdict for him as against the plaintiffs, they also made a positive award to Turnbull against the added defendant, for the amount of $966.10, representing damages to Turnbull's car. I refer once again to *Amati v. Williams*, supra, where the original defendant received favorable verdicts identical to those Turnbull received in this case, and in which case we ordered a new trial against the additional defendant only, on the premise that the original defendant had been found to be free from liability.

Conceding, for the sake of argument, that the majority is correct in stating that the inconsistency of the verdicts against Agnes Stokan makes them somewhat suspect, I find no logical basis to conclude that the verdicts in favor of James Turnbull were in any way tainted by that inconsistency. Perhaps the inconsistency in that portion of the verdict can be attributed to sympathy, misunderstanding, or confusion as to what harm done was actually compensable. Whatever the reason for the inconsistent verdict, one thing is totally clear, as evidenced by the verdicts affecting James Turnbull, that being the jury's conclusion that Turnbull was not liable for any of these damages, but was in fact an innocent party, himself entitled to compensation for damages to his automobile, caused by the added defendant, Agnes Stokan.

To deprive Turnbull of this definitive verdict, forcing him to undergo the entire process which has once before exonerated him, is, in my view, unjust.

I would affirm the lower court's order of a new trial against Agnes Stokan alone, limited to the issue of damages.

HOFFMAN, J., joins in this dissenting opinion.