## Pierce's Estate.

172

Submitted May 7, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*W. Davis Graham,* for appellant.

*Harry L. Allshouse,* for appellee.

OPINION BY STADTFELD, J., September 30, 1936:

Charles G. Pierce, a resident of Allegheny County, died intestate on May 30, 1932, seized and possessed of certain personal property. Letters of Administration on his estate were granted on June 7, 1932, to Commonwealth Trust Company of Pittsburgh.

During his lifetime, to-wit: on March 26, 1931, the said Charles G. Pierce entered into a written agreement with his then wife, Clarissa F. Pierce, appellee herein, which provides inter alia, the following: "whereas, divers disputes and unhappy differences have arisen between the said Charles G. Pierce and Clarissa F. Pierce, his wife, for which reason they are no longer living together as husband and wife; and

"Whereas, it is the desire of the said Charles G. Pierce to provide for the proper support and maintenance of his wife and the support, maintenance and education of his son, Charles Pierce:

"Now, Therefore, This Indenture Witnesseth, that the said Charles G. Pierce, in consideration of the premises and in pursuance thereof, does hereby covenant, promise and agree to and with the said Clarissa F. Pierce, his wife, that he, the said Charles G. Pierce will at all times hereafter pay to the said Clarissa F. Pierce the sum of Twenty ($20.00) Dollars per week for her support, said weekly payments to be made as long as the said Clarissa F. Pierce shall live, or in

case of a divorce by either party as long as she shall not remarry, all of said payments to be in addition to any payments or sums of money so far received by the said Clarissa F. Pierce. The said Charles G. Pierce further agrees that all the household goods and furniture now in the possession of the said Clarissa F. Pierce or now in storage in her name, shall be the absolute and sole property of the said Clarissa F. Pierce. The said Charles G. Pierce further agrees to pay all the expenses of schooling for his son, Charles Pierce, until he is graduated from college, and also agrees to pay all storage charges on the goods now stored by Clarissa F. Pierce, until such time as his son, Charles Pierce, shall finish college and shall secure a position.

"As security for the faithful carrying out of the above covenants and agreements, the said Charles G. Pierce has assigned and transferred to the said Clarissa F. Pierce all his stock in the McKown-Carnes Company, Inc., which stock so assigned shall be retained by the said Clarissa F. Pierce during the life of this agreement, free and clear of any claim therein of the said Charles G. Pierce. In case of default of any of said payments or other breach of this agreement, all title of the said Charles G. Pierce to said stock shall immediately terminate and end and the said Clarissa F. Pierce shall be at liberty to sell or dispose of same as she may see fit.

"It being mutually understood and agreed, however, by and between the parties hereto that this agreement may be cancelled immediately upon the payment by the said Charles G. Pierce to the said Clarissa F. Pierce of the lump sum of Seven Thousand ($7,000.00) Dollars, which sum shall be in addition to any payments already made. And it is further understood and agreed by and between the parties hereto that in case of the death of the said Charles G. Pierce before the death or remarriage of the said Clarissa F. Pierce, the said stock shall be retained by the said Clarissa F. Pierce until

the sum of Seven Thousand ($7,000.00) Dollars shall have been paid to her out of my estate, or retained by her as security for the continued payment by my estate of the stipulated weekly sums as provided for herein.

"The said Clarissa F. Pierce, in consideration of the premises and the covenants herein contained, hereby agrees to and with the said Charles G. Pierce that she will not at any time ask for or seek any financial help or assistance from the said Charles G. Pierce or annoy, disturb or trouble him in any way for or on account of the support or maintenance of herself and the support, maintenance and education of their son, Charles Pierce, with the exception of the sums stipulated and agreed upon herein."

The agreement further provides that the ownership and control of the individual property of the parties shall remain in each of them respectively as if they were unmarried and each relinquished all the right and interest in the estate of the other to which he or she might be entitled by reason of the marital relation.

Said agreement was never cancelled, and all payments provided for therein were made by said decedent during his lifetime, and were continued for nine weeks after his death by the administrator of his estate, when it declined to make further payments. Following failure of the administrator to continue said payments, and after repeated efforts and advertisements by the administrator to find a purchaser for said stock, which had been included by said administrator in inventory and appraisement filed by it, subject to the claim of Clarissa F. Pierce, the stock in question was sold on January 17, 1933, by Clarissa F. Pierce, for $1,000, and this amount applied by her on said weekly payments.

The said Charles G. Pierce procured a divorce from his wife, Clarissa F. Pierce, on June 17, 1931, and later married Zina Pierce, appellant herein. The said

Clarissa F. Pierce has never remarried, and is still living.

Claim was presented at the audit of said estate in the Orphans' Court of Allegheny County. After hearing and taking of testimony, said claim was allowed, in an opinion by MITCHELL, J., and the sum of Four Thousand Two Hundred Seventy-one and Ninety-nine Hundredths ($4,271.99) Dollars, the entire balance for distribution after the payment of all other obligations, was ordered distributed to the Commonwealth Trust Company, Trustee, for the purposes set forth in said agreement dated March 26, 1931. Decree of distribution was made by said court on April 7, 1933.

To the allowance of said claim and the decree of distribution so made, exceptions were filed by Zina Pierce, second wife of said decedent, on April 17, 1933. Argument on said exceptions was heard before the court en banc and on May 4, 1933, exceptions were dismissed and the original decree was affirmed with the qualification that the Trustee should not pay out any part of the amount distributed by the Decree until the $1,000, the proceeds of the sale of the collateral in the hands of Clarissa F. Pierce, had been exhausted by payment to her of the stipulated weekly sums as provided for in said agreement. Following said decree and the consumption of the fund of $1,000, the Commonwealth Trust Company of Pittsburgh, as Trustee, resumed payment of said weekly sums and has continued same to the present time. From said decree, this appeal was thereafter taken.

The facts are not in dispute. The sole question involved is the interpretation of the agreement referred to and quoted in part supra. Appellant contends that the agreement gave no claims against the estate, that the decedent provided for his wife in *one* of three ways: (1): $7,000 in a lump sum; or (2) $20 per week; or (3): the stock; that she could not have *both* the

stock *and* $20 per week; that unless the estate elected to make the stock part of the estate by paying $7,000, or $20 per week until claimant died or remarried the stock belonged to claimant; that it gave to the estate rights in the stock to be exercised at the option of the estate.

Appellant's contention ignores the essentials of the agreement. The agreement was made to provide for the proper support and maintenance of the wife, and the one principal thing in contemplation of the parties at the time was the payment of "the sum of Twenty ($20.00) Dollars per week for her support, said weekly payments to be made *as long as the said Clarissa F. Pierce shall live,* or in case of a divorce by either party *as long as she shall not remarry."* The intention was to provide for and safeguard said payments, and as set forth in said agreement, the stock in question was merely pledged "as security for the faithful carrying out of the above covenants and agreements," and was not given as a substitution for same.

As stated above, the principal item in said contract was the provision for the weekly payments, and the contract then stipulated the manner in which said payments could be terminated by the obligor. This was not, however, to result from his own breach of contract, but only from the payment by him of the lump sum of $7,000. The contract also gave the same privilege to the estate of the said obligor.

It was intended that said payments should continue as long as claimant lived and remained unmarried and consequently the estate of Charles G. Pierce was obligated by said agreement to continue said payments, and could only be released from said obligation upon the payment of the sum of Seven Thousand ($7,000) Dollars in cash. A default in said payments by said estate, as admitted, will not cancel said agreement, and since the sum of Seven Thousand ($7,000) Dollars

has not been paid to the claimant, the estate is still bound to continue said payments to her until her death or remarriage.

The contract in the instant case is not such a contract as depends upon the personal skill or ability of the one to perform. In *Jacquette's Estate,* 1 Chester County Reports 197 (1877), the court in its opinion by Ross, P. J., on p. 199, held: "1. That the contract of a decedent can survive only when it does not depend upon his character or skill, and is not personal to himself; and 2. When it is a more general duty, *such as the payment of money* or the performance of an act which anyone may do; or 3. Where it is clearly the *intention* of the contract, and the parties to it, that it shall survive." In the instant case, the agreement provides only for the payment of money, and the parties thereto *plainly intended that it* should survive. This is evident from the following portion of said contract: "And it is further understood and agreed by and between the parties hereto that *in case of the death* of the said Charles G. Pierce before the death or remarriage of the said Clarissa F. Pierce, the said stock shall be retained by the said Clarissa F. Pierce until the sum of Seven Thousand ($7,000.00) Dollars shall have been paid to her out of my estate, or retained by her as security for the *continued payment by my estate* of the stipulated weekly sums as provided for herein."

In *Hunt's Appeals; Lehman's Appeals,* 105 Pa. 128 (1884), it was held: "A covenant made by a decedent in his lifetime, by which he bound himself 'to be responsible for, and guarantee the payment of, the interest on a mortgage until the mortgaged premises should be so improved as to constitute adequate security for the mortgaged debt, survives the death of the covenantor, and can be enforced against his personal representatives, so as to recover interest accruing thereafter."

In *Davis' Estate,* 17 District Court Reports 570

(1907), the opinion of the court by WILLIAMS, J., on p. 572, contains the following: " 'The general rule is that all personal covenants survive to the Executor, and to take a case out of the rule there must be something more than the mere fact that the covenant is to be performed in future, *Hunt's* and *Lehman's Appeals*, supra.' ...... And therefore, as a general rule, the personal representatives of a deceased person can sue or be sued on all contracts of whatever description made by him, whether broken before or after his death."

In *Stumpf's Appeal*, 116 Pa. 33, 8 A. 866, an agreement for the support and maintenance of an illegitimate child was involved. No mention was made in said agreement as to *heirs or payments by the estate of the obligor*, and yet the court held the estate of said obligor liable for support and maintenance till child became twenty-one, and further ordered a portion of said estate set aside and the income from same to be used for said support and maintenance.

In *Book's Estate*, 297 Pa. 543 (1929), 147 A. 608, the court, following the authority of *Billing's Estate* in 106 Pa. 558, held: "But where a party agrees to do what does not necessarily require him to perform in person, what he may, by assignment of his contract or otherwise, employ others to do, it may be inferred, unless otherwise expressed, that a mere personal relation was not contemplated."

In *Huffman v. Huffman*, 311 Pa. 123 (1933), 166 A. 570, a contract providing for the support of wife and minor children was involved, and the court held that the contract did not die with the obligor, but that to the extent of the assets that came into their hands, the personal representatives of said decedent were responsible on all his contracts, whether named therein or not, and whether the breach occurred in his lifetime or afterwards.

The validity of the agreement is not questioned by

appellant. Quoting from the opinion of the lower court: "Family settlements are always favored, and, when made to settle controversies between husband and wife, will be enforced if legally possible. So agreements for support of one who has withdrawn from the house and family, or made in view of an understanding that the marital ties will be immediately broken, are upheld ...... If legally made, and apparently fair and reasonable, compliance with the terms agreed on will be compelled: *Miller v. Miller,* 284 Pa. 414. The amount provided for the maintenance of the wife is moderate, and there is nothing to indicate that this covenant for her support ended with his death. The agreement was not personal in its nature, and its reading discloses the purpose to provide for the wife even after decedent's death: *Huffman v. Huffman,* 311 Pa. 123. The presumption is in favor of the validity of the contract: *American National Bank, Camden, Administrator v. Kirk et al.,* 317 Pa. 551."

As claimant is entitled to the weekly payment so long as she lives, or until her remarriage, the decree securing that payment was a proper one.

The assignments of error are overruled and the decree of the lower court is affirmed. Appellant to pay costs.