Schofield, Appellant, *v.* Schofield.

470

Argued October 19, 1936.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

Robert B. Ely, III, for appellant (No. 265) and for appellee (No. 270).

W. Bradley Ward, with him Lemuel B. Schofield, for appellee (No. 265) and for appellant (No. 270).

OPINION BY KELLER, P. J., January 29, 1937:

These are cross-appeals growing out of an action on a written agreement, dated April 4, 1932, which the plaintiff avers was modified by parol and the defendant claims was cancelled.

When the agreement was entered into the parties

were married and had two sons, aged nine and eight years respectively. Husband and wife were then living apart, and subsequently, on July 14, 1932, they were divorced.

The agreement related to two distinct matters: (1) The husband, defendant in this action, agreed in paragraph one, to provide for the support and maintenance of his wife and their two children, and to that end, agreed to pay her the sum of $225 per month, commencing June 1, 1932, payable $75 on or before the tenth, twentieth and last days of each month. He also agreed (paragraph 3) to pay all her medical and dental expenses, and those of the two children, provided the physicians, etc. were approved by him; (2) the husband acknowledged, in paragraph two, that he owed his wife the sum of twelve hundred dollars and agreed to pay her legal interest on said sum, semi-annually on or before the first days of June and December in each year; the principal amount to be paid by him "at such times and in such amounts as he may desire."

The agreement further provided that the wife should have the custody of the children, but should not remove them from the States of Pennsylvania and New Jersey except for short visits, without the husband's consent, and secured him the right of reasonably visiting them. If in the future, it was deemed advisable by either party to send the children to private school or summer camps, the husband agreed to pay the difference between the amount necessary to maintain them at home and such extra costs, provided he approved of their selection and was in a financial position to enable him to pay the extra costs.

The agreement was to terminate in the event of the wife's remarriage, but the husband would then make a new agreement for the separate maintenance of the children; and it was expressly provided "that no decree of legal separation or of divorce from the bonds

of matrimony shall in any way affect this agreement or alter any of the terms, covenants or conditions hereof, said agreement being absolute, unconditional and irrevocable and both parties intending to be legally bound hereby." It may be interjected here that an agreement containing such a provision for the wife's support provided it was not made collusively to secure a divorce—of which there is no evidence here—is valid and will be enforced, even after the parties are divorced: *Miller v. Miller*, 284 Pa. 414, 131 A. 236; *Huffman v. Huffman*, 311 Pa. 123, 166 A. 570; *Pierce's Est.*, 123 Pa. Superior Ct. 171, 187 A. 58. The agreement contained a clause whereby the wife waived any and every other claim against the husband for maintenance and support or alimony, pendente lite or other wise, and concluded with the following paragraph: "9. The agreement shall continue in force so long as the party of the second part [the wife] maintains a separate home for herself and the two children, sons of the parties, and until each of the said children shall actually be self-supporting. This agreement shall terminate, however, upon the death or re-marriage of the party of the second part. This agreement shall also terminate upon the death of one child. Party of the first part agrees to support party of the second part and the surviving child, by payment to the party of the second part an amount sufficient to properly provide for their support in the station of life in which they are then living, and in no event less than One Hundred Seventy-five Dollars ($175.00) per month."

On August 5, 1935 plaintiff brought this action against defendant alleging a breach by him of the terms of the agreement, as modified by parol as hereinafter stated, and claiming the sum of $2363.80; (1) $1200 thereof with interest from April 4, 1932, as representing the money which, in paragraph two, he acknowledged he owed her, and (2) $1163.80 thereof as

representing the unpaid instalments due her under the provisions agreeing to pay for her maintenance and support, as modified by parol, with interest from an average due date of January 1, 1934. She averred— and gave testimony in support thereof—, that some- time in August or September, 1932, the written agree- ment was modified by parol, in substance as follows: The defendant was in arrears in the monthly pay- ments for support and maintenance called for by the agreement and had not paid the interest due on June 1, 1932 on the money he owed her. He told her he would not be able to pay her the $225 a month he had agreed to pay her; that he was not making sufficient money to do so. She had no means of her own and could not maintain a home for herself and the chil- dren unless he furnished the money he had agreed to pay her. Defendant was then living with his mother, who appears to be a person of means. Plaintiff sug- gested that, until defendant was able to pay plaintiff the $225 a month he had agreed to pay her, he ask his mother if she would be willing to look after the chil- dren also, and asked him whether, in that event he would pay her [plaintiff] $100 a month, and he said he was sure he could do that, and agreed to do it, pur- suant to which the children lived with their grand- mother during school periods and spent with the plain- tiff only such time in the summer as they were not away to summer camps. She testified that she asked defendant "Do you think an agreement had better be drawn up for this?" and he said, "No, your original agreement will hold good for any time, and there is not any use in having another agreement drawn up." Pursuant to this oral modification, defendant con- tinued making payments to her monthly up to and in- cluding June, 1935—except in September 1933,—but did not always pay her the full amount agreed upon as modified, the total arrears in such payments, in-

cluding the arrears under the original agreement, being $1163.80, less some additional items, admitted on the trial to have been paid by defendant for rent, gas, etc. for her account during one summer. The defendant's version was that in September 1932 the plaintiff agreed that the children should be given to him to live with his mother and sent to school and that the agreement should be cancelled, and that his subsequent payments to plaintiff, amounting to about three thousand dollars, were voluntary gifts on his part, made as he was able to pay them. His testimony was to some extent inconsistent and contradictory, but is stated in the light most favorable to him as follows (p. 62a) : "We discussed the possibility, the probability, of drawing up a new agreement, and I remember saying to her, 'Why I think we have had too many agreements and too much trouble with lawyers. I think we can cancel, drop this agreement, and I will give you some money for yourself.' She said she didn't want to go home and live with her father and mother. I asked her what she thought she could live on. She said she thought she needed $100 a month. I said, 'Right now perhaps it will depend on my income as to how much of the $100', or how much of the $100 I am able to give her, and the payments went on at the rate of $100 a month for a while, as the record shows, and since then, when I was not able to give her the full $100 a month, they have been a good fraction of it. ...... As I understood it the former agreement was cancelled and void." On the other branch of the case, he admitted owing her $1120, instead of $1200, for money which she had lent him,—the other $80 representing what he owed the children—and that he had not paid her anything by way of interest or principal although she had asked him for it from time to time, but he contended that the cancellation of the agreement had also

wiped out her right to recover it or any part of it in this action.

The case was tried before Judge LEWIS, without a jury. Both parties testified. The trial judge ruled that the plaintiff was entitled to recover the sum of $1120, with interest from April 4, 1932, because of defendant's admission and covenant in paragraph two of the agreement, as above recited; but as respects the other item in the plaintiff's claim, without making any finding as to whether the plaintiff's or the defendant's version of what took place in September, 1932, was the true one—whether the agreement was modified as asserted by the plaintiff or cancelled as claimed by the defendant—he concluded that as the plaintiff had not maintained a separate home for herself and two children after September, 1932, under paragraph nine of the agreement, there could be no recovery on that item of her claim—that the ninth clause amounted to a limitation on her right to receive payments for maintenance and support from defendant and when she ceased maintaining a separate home his liability for maintenance and support under the agreement ended.

Both parties appealed; the plaintiff from the ruling that she could not recover under the maintenance and support item of her claim; the defendant from the ruling that he was liable in this action for the money which he admits he owes his wife.

(1) We think the learned trial judge was right in entering a finding in favor of the plaintiff and against the defendant on the item of $1200— reduced to $1120 —which defendant acknowledged owing the plaintiff in paragraph two of the agreement, with interest from April 4, 1932, and that the defendant's appeal must be dismissed. While this item was incorporated in the agreement, it was entirely separate and distinct from, and was not to depend in any way upon, those clauses in the agreement relating to the maintenance

and support of the wife and children. It constituted an unconditional acknowledgment of indebtedness and a definite agreement to pay interest on the amount due and owing, semi-annually on June 1 and December 1 of each year. The parties were married at the time and did not see fit to fix a definite date for the payment of the principal, leaving it uncertain in this respect. But the debt owing by him would not be affected by the conditions attached to payments for maintenance and support. It made no difference as respects the debt thus owed by defendant whether plaintiff lived or died, remained single or married again, kept a separate home or not, the acknowledgment of debt and the promise to pay interest were absolute and unconditional. Even if the agreement were cancelled as respects the provision for maintenance and support, it would not affect the validity or legal effect of the debt which he acknowledged to owe his wife. A will, which contains an absolute and unconditional acknowledgment of a debt due by the testator and not barred by the statute of limitations, may be the basis of an action by the creditor even though the will is revoked as a testamentary disposition of the testator's estate. See *Ellsworth v. Aldrich,* 295 S. W. 206 (Tex. C. A.); *Keagle v. Pessell,* 52 N. W. 58 (Mich.); Schouler on Wills, sec. 270. The court below, in the course of the trial, construed the clause in the agreement to be in substance as follows: "There is an admission of an indebtedness of $1200 and a promise to repay the principal of it at such times as he may desire, provided the interest is paid semi-annually at the rate of six per cent. Have I got the substance of it?" Counsel for defendant: "That is right." As the parties were married the statute of limitations did not run as between them (*Morrish v. Morrish,* 262 Pa. 192, 201, 105 A. 83; *Lineaweaver's Est.,* 284 Pa. 384, 131 A. 378) and an absolute acknowledgment of the indebtedness

by the husband, followed by an unconditional agreement to pay the interest on the debt twice a year, carried with it the implied agreement to pay the principal within a reasonable time (*Wilker v. Jenkins*, 88 Pa. Superior Ct. 177), especially so after the marriage relation was dissolved. We are of opinion that a period of over three years, during which defendant paid nothing by way of interest or principal, was as long as defendant could reasonably ask for delay and that the full amount, principal and interest, is now recoverable. In the cases relied on by defendant there was either no definite and unconditional acknowledgment of the debt, or no certain and definite obligation by the debtor to pay the creditor either interest or principal at any stated time.

(2) The plaintiff contends that the learned trial judge impliedly found that the contract between the parties, as respects the provisions for plaintiff's support, was not cancelled by mutual agreement of the parties in September, 1932, as alleged by the defendant; and that may have been in his mind. The defendant's story and his actions after September 1932 are so inconsistent as to support such a finding, if made. But the trial judge did not definitely so find and we cannot make a finding for him. We are not the triers of fact. We are, however, of opinion that if the plaintiff's story as to the parol modification of the written contract is found to be true—which would, of course, amount to a finding that the defendant's story of the cancellation in September 1932 was not true,—then the plaintiff would be entitled to recover from the defendant the arrears due under the contract as so modified, and that the trial judge's refusal to find in her favor because she had not kept up a separate home was erroneous. In the absence of the parol modification of the contract as testified to by plaintiff, we agree with the learned trial judge that the mainte-

nance of a separate home by plaintiff for herself and children would be a necessary condition to her right to enforce the payments for the maintenance and support of herself and children, but, in the circumstances here testified to,—if found to be true,—the maintenance of such a separate home for herself and children was waived by the husband's announcement of his inability to pay her the amount fixed in the contract as necessary to maintain that separate home, and his agreement, that until he was able to resume such payments, he would pay her a greatly reduced amount for her own maintenance and support, apart from the children. The agreement is clear that it was the intention of both parties that the defendant should support and maintain the plaintiff, as well as their children, and that this obligation should survive any divorce that might be obtained, and should last until the plaintiff died, was married again or the children became self-supporting. The fact is inherent in many clauses of the contract as well as in the preliminary agreement signed by defendant which was properly received in evidence, only as bearing upon the intention in this respect. It is definitely stated in the third 'whereas' and the paragraph immediately following. It appears in the agreement to pay her medical and dental bills; in the fifth paragraph of agreement relating to sending the children away to school or summer camps, in which defendant agrees under condition, to "pay the difference between the amount necessary to *maintain the children at home*"—not the full $225, part of which is for her support—and such extra costs; and by the provisions in the sixth and ninth paragraphs, relating to her remarriage, or the death of one child, when a. new agreement for the support of the party of the second part, (the plaintiff), and the surviving child is to be made, and $50 per month

is suggested as the cost of maintaining a child for a month.

If the defendant kept up the payments of $225 a month, the plaintiff was bound to keep and maintain a separate home for herself and the children, and if she failed to do so, the obligation to continue such payments ceased. But the defendant could not nullify the agreement by failing to provide her with the money necessary for her to maintain a separate home. He cannot enforce a limitation brought about by his own failure or refusal to perform his contract; or insist upon her performance of the contract, when his own refusal or inability to carry out the contract has been the cause of her non-performance: *Ramsey v. Ramsey,* 15 Pa. Superior Ct. 214, 219; *Shoemaker's Account,* 277 Pa. 424, 429, 121 A. 510; *Sisney v. Diffenderffer,* 323 Pa. 337, 343, 185 A. 830; "Where failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise or that he doubts whether though able he will do so, the duty of such other party becomes independent of the condition or promise": Restatement, Contracts, sec. 306. Undoubtedly it was contemplated in the contract that the plaintiff should maintain a separate home for herself and children, but it was also contemplated, as a prerequisite to that, that the defendant would pay her $225 a month, out of which this separate home would be maintained. She had no other means to maintain it. When defendant found that he was unable to continue paying her $225 a month, and so informed her, both parties understood that she could not maintain such a home while he defaulted in his payments under the contract. Their agreement that, until he was able to resume the payments called for by the contract, the children should be kept by his mother, to whom he paid only $20 a

month for their board, and that he should pay his wife only $100 a month for her own support, necessarily modified the requirement that she should keep and maintain a separate home for herself and children. She could not maintain such a home unless he paid her $225 a month, and there was no necessity for her doing so while the children were living with their grandmother and the defendant was paying her an amount intended only for her own support.

Accordingly the learned trial judge erred in holding that paragraph nine of the agreement barred plaintiff's right to recover on this item of her claim.

As the ultimate outcome of this branch of the case is dependent upon the finding of fact as to the parol modification of the agreement as testified to by plaintiff, the case will have to go back for a retrial; and this necessarily requires a new trial of the whole case. While the plaintiff is entitled to a finding or verdict as respects the $1120 which defendant acknowledged owing her, there cannot be two separate verdicts or judgments in one action in assumpsit. The grant of a new trial means a new trial of the whole case: *Iwankow v. Colonial Life Ins. Co.*, 120 Pa. Superior Ct. 114, 181 A. 870; *Campbell v. National-Ben Franklin Fire Ins. Co.*, 123 Pa. Superior Ct. 274, 187 A. 217.

Appeal No. 265 October Term, 1936. The judgment is reversed and a new trial awarded.

Appeal No. 270 October Term, 1936. The appeal is dismissed.