**J. Hall STACKPOLE and St. Marys Trust Company, Executors of the Estate of Harry C. Stackpole, Deceased, Plaintiffs,**

**v.**

**Stanley GRANGER, Collector of Internal Revenue for the 23rd Collection District of Pennsylvania, Defendant.**

**Civ. A. No. 9820.**

United States District Court
W. D. Pennsylvania.
Dec. 8, 1955.

Thomas J. McManus, Carl E. Glock, Jr., Pittsburgh, Pa., Reed, Smith, Shaw & McClay, for plaintiffs.

D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., Leland T. Atherton, Atty., Dept. of Justice, Washington, D. C., for defendant.

JOHN L. MILLER, District Judge.

The above-entitled case was tried by this court without a jury.

### Findings of Fact

1. This is a suit for the recovery of Federal estate taxes in the amount of $97,162.51 and interest thereon in the amount of $13,794.41, or a total of $110,956.82, together with interest from the date of payment as provided by law.

2. Harry C. Stackpole (decedent herein) died on February 3, 1945, at the age of sixty-nine, a resident of St. Marys, Pennsylvania.

3. Plaintiffs are the duly appointed and acting executors of the last will and testament of the decedent dated February 20, 1942. Plaintiff J. Hall Stackpole is, and at all times hereinafter mentioned was, a citizen of the United States residing in St. Marys, Pennsylvania. Plaintiff, St. Marys Trust Company is, and at all times hereinafter mentioned was, a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania.

4. Stanley Granger, defendant, was the duly appointed, qualified and acting Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania at the time the complaint was filed, and all taxes at issue herein were paid to him.

5. Prior to 1930 decedent was married to Sara Hall Stackpole. They had three children: James Hall Stackpole, Harrison Clinton Stackpole, and Lyle Hall Stackpole, later Kitching and now Townsend.

6. On March 31, 1930 by indenture of trust decedent transferred to James Hall Stackpole, trustee, 210 shares of the common stock of Stackpole Carbon Company. The indenture of trust provided that the net income of the trust should be paid to the use of decedent so long as he lived, and that the trust should terminate and the trust property be paid over upon his death to his son James Hall Stackpole. James Hall Stackpole was over the age of twenty-one years on March 31, 1930 when said indenture of trust was executed and was alive and more than thirty years of age on February 3, 1945, the date of decedent's death.

7. On March 31, 1930 by indenture of trust decedent transferred to James Hall Stackpole, trustee, 210 shares of the common stock of Stackpole Carbon Company, a Pennsylvania corporation. The indenture of trust provided that the net income of the trust should be paid to the use of decedent during his lifetime, and upon his death to his son Harrison Clinton Stackpole until he arrived at the age of thirty years, at which time the said son was to receive the property discharged of the trust if he was then living. Harrison Clinton Stackpole was born on June 9, 1914, and on March 31, 1930 he was fifteen years of age, and he was alive and more than thirty years of age on February 3, 1945, the date of decedent's death.

8. On March 31, 1930 by indenture of trust decedent transferred to James Hall Stackpole, trustee, 210 shares of the common stock of Stackpole Carbon Company, a Pennsylvania corporation. The indenture of trust provided that the net income of the trust should be paid to the use of decedent so long as he lived and upon his death to his daughter Lyle Hall Kitching (now Lyle Hall Townsend) during her lifetime, and that the trust "shall terminate upon the death of the Bene-

ficiary, unless the Beneficiary shall predecease the Settlor, in which event the trust shall terminate upon the death of the Settlor." Upon termination of the trust the corpus was to be conveyed and paid over to such person or persons as decedent's daughter might by a last will and testament appoint to receive the same, and in default of such appointment, then over to other persons. Since decedent's death the trustee has held the trust property for the benefit of the beneficiary, Lyle Hall Kitching (now Lyle Hall Townsend). The daughter was living at the date of the death of the decedent.

9. Each of the indentures of trust contains the following language:

"Any and all stock dividends which shall be received by the Trustee with respect to any securities at any time held in the trust shall be deemed to constitute principal of the trust and shall be treated accordingly."

10. By a decree of the Court of Common Pleas of Elk County, Pennsylvania, dated April 1, 1930, entered at No. 26 April Term, 1930, decedent and Sara Hall Stackpole were divorced.

11. On May 9, 1930 decedent married Adelaide Wittman. Jude Stackpole, born July 4, 1936, was adopted by decedent and his wife in 1937.

12. On December 31, 1936 Stackpole Carbon Company issued 40 shares of its common stock in exchange for each share of common stock then outstanding in accordance with a resolution of the Board of Directors dated December 21, 1936 and a resolution of the stockholders dated December 22, 1936. Each of the three trusts received 8,400 shares of the new common stock for the 210 shares then held. The three trusts thus received 25,200 shares for the 630 then held.

13. In December 1939 Stackpole Carbon Company distributed nine additional shares of common stock for each 16 shares then outstanding in accordance with resolution of the Board of Directors dated December 12, 1939. As a re-sult thereof, each of the trusts received 4,725 shares, and the three trusts received a total of 14,175 additional shares, thus increasing to 39,375 shares of common stock, the shares in the trusts.

14. On decedent's death on February 3, 1945 the trustee held for each trust 13,125 shares of the common stock of Stackpole Carbon Company or a total of 39,375 shares for the three trusts.

15. In his will, decedent devised and bequeathed his residuary estate one-fifth outright to each of the following: his wife, Adelaide W. Stackpole, his son, J. Hall Stackpole, and his son, Harrison C. Stackpole, and one-fifth in trust to each of the following: his daughter, Lyle Hall Townsend, and his adopted son, Jude Stackpole. His wife, Adelaide W. Stackpole elected to take against the will and, therefore, was entitled to one-third of his residuary estate, and each of the remaining residuary legatees was entitled to one-sixth of the residuary estate.

16. On April 4, 1946 plaintiffs filed with defendant, Stanley Granger, Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania, a federal estate tax return (Form 706) for the Estate of Harry C. Stackpole, Deceased, showing a federal estate tax liability of $86,072.84, which amount was on April 8, 1946 duly paid by plaintiffs to said defendant as Collector.

17. Plaintiffs, in preparing decedent's federal estate tax return, did not include in decedent's gross estate any of the shares of stock of the company held by the three trusts.

18. The Commissioner of Internal Revenue, following an examination of the federal estate tax return, on May 4, 1948 issued a notice of deficiency in which he determined that 11,451 shares of stock of Stackpole Carbon Company held by the trustee of the three trusts created by decedent on March 31, 1930 were includible in decedent's estate for federal estate tax purposes at $20 per share or a total value of $229,020. The basis for this determination was the contention that under the Pennsylvania stat-

ute against accumulations, Act of April 18, 1853, P.L. 503, § 9, as amended, 20 P.S. § 3251, the provisions of the trusts that all stock dividends should be considered principal were invalid and that consequently under the so-called "intact value" rule, 11,451 shares should have been distributed to decedent as income.

19. In August 1948 the Commissioner of Internal Revenue assessed a federal estate tax deficiency against plaintiffs in the amount of $97,162.51 and interest thereon in the amount of $13,794.41, and defendant demanded payment of $110,956.82 from plaintiffs, which amount plaintiffs paid to defendant on October 22, 1948.

20. On or about June 23, 1948 James Hall Stackpole, the trustee, filed his accounts for the Lyle Hall Kitching Townsend trust, the James Hall Stackpole trust and the Harrison Clinton Stackpole trust in the Orphans' Court of Elk County, Pennsylvania, at Nos. 2, 3 and 4 June Term 1948 respectively. These accounts included all the stock dividends as belonging to the trustee for the benefit of the remaindermen under the trusts.

21. Under the defendant's construction of the deeds of trust, the 11,451 shares would be divided as follows: Mrs. Adelaide W. Stackpole, ⅓, Jude Stackpole, ⅙, J. Hall Stackpole, ⅙, Harrison C. Stackpole, ⅙, Lyle Hall Townsend, ⅙. Under the account as filed by the trustee, Mrs. Adelaide W. Stackpole and Jude Stackpole received none of the shares and J. Hall Stackpole, Harrison C. Stackpole and the trustee for Lyle Hall Townsend each received ⅓.

22. The executors, plaintiffs herein, and their attorney, Thomas G. Gregory, decided that the matter should be adjudicated by the court having jurisdiction of the estate and of the trusts. Mr. Gregory suggested to Mrs. Adelaide W. Stackpole that she should institute proceedings to contest the trustee's accounts. At that time Mrs. Adelaide Stackpole was already engaged in litigation adverse to the executors and the other legatees, in which litigation she was represented by John Pentz. After studying the matter, Mr. Pentz advised Mrs. Stackpole and Mr. Gregory that in his opinion the trustee's construction of the trusts was correct under Pennsylvania law, and he advised against her instituting any proceedings.

23. Jude Stackpole, the only other party who was adversely affected by the trustee's construction, was a minor for whom the Orphans' Court of Elk County, Pennsylvania, had appointed Harrison C. Stackpole as guardian. Since J. Hall Stackpole and Harrison C. Stackpole were beneficiaries under the deeds of trust and the will, their interests in this question were adverse to those of Jude. Therefore, the executors filed a petition with the Orphans' Court of Elk County, Pennsylvania, for the appointment of a guardian ad litem for Jude to oppose the trustee's construction of the trusts. On or about June 25, 1948 George J. Fehrenbach was appointed guardian ad litem for Jude Stackpole by the court.

24. George J. Fehrenbach, as guardian ad litem for Jude Stackpole, filed exceptions to each of the first and final accounts of J. Hall Stackpole, trustee. The said exceptions claimed that 3,921 shares of common stock of Stackpole Carbon Company held by each of the trusts, or a total of 11,763 shares, were income of the trusts distributable to decedent during his lifetime as beneficiary of the trusts and were therefore assets of decedent's estate distributable in accordance with the terms of his will.

25. A hearing was held on the exceptions on November 15, 1948 before Judge Henry Hipple of the Orphans' Court of Elk County, Pennsylvania, at which the guardian ad litem was represented by counsel, Alphonse J. Straub. Neither the executors of decedent's estate as such nor their counsel participated in the proceedings. After the hearing, briefs were prepared and filed by counsel for the beneficiaries and for the guardian ad litem.

26. On November 4, 1949 the Orphans' Court of Elk County, Pennsylvania, filed opinions and orders dismissing the exceptions and confirming ab-

solutely the accounts of the trustee for James Hall Stackpole at No. 3 June Term 1948 and for Harrison Clinton Stackpole at No. 4 June Term 1948. On November 18, 1949, the Orphans' Court of Elk County, Pennsylvania, filed an opinion and order dismissing the exceptions and confirming absolutely the account of the trustee for Lyle Hall Kitching (now Lyle Hall Townsend) at No. 2 June Term 1948.

27. After these decisions, Mr. Straub, the attorney for the guardian, advised the guardian that in his opinion an appeal from these decisions would not be successful. This advice was based upon his study of the law and the advice of Mr. Pentz, Mrs. Adelaide W. Stackpole's attorney, who was of the same opinion. The guardian took no appeal. Neither the guardian nor his attorney consulted with or had any understanding with the executors, the remaindermen or their attorneys concerning the filing or not filing of an appeal.

28. On or about December 19, 1949 plaintiffs filed with defendant a claim for refund for the recovery of the $110,956.-82 which plaintiffs had paid to defendant. The Commissioner of Internal Revenue had neither approved nor rejected the claim on August 24, 1951, when the complaint was filed in this action, more than six months having elapsed since plaintiffs had filed with defendant the claim for refund.

29. In his answer to the complaint defendant first raised the defense that decedent created the three trusts in contemplation of death and/or intended them to take effect in possession or enjoyment at or after his death, so that the entire corpus of the three trusts was includible in decedent's gross estate.

30. In his amended answer defendant first raised the defense that decedent's relinquishment to the principal of the trusts of the stock distributed to the trustee in 1936 and 1939 was a final disposition of such stock made in contemplation of death and/or intended to take effect in possession or enjoyment at or after his death.

31. In his amended answer defendant first raised the defense that the original transfers to the trusts were made without a valid consideration and that the decedent lacked donative intent, so that decedent was the real owner of the trust property at his death.

32. Decedent had left his first wife more than two years before 1930. He desired to marry his secretary, Adelaide Wittman, a much younger woman. He had no grounds for a divorce and requested his first wife to obtain a divorce. She agreed to divorce him only on the condition that he place all his stock in Stackpole Carbon Company in irrevocable trusts for the benefit of her children.

33. Mrs. Stackpole's motives for making this the condition for the divorce were that she wanted to insure that the stock of Stackpole Carbon Company would not be diverted from her children and would not get into the hands of Adelaide Wittman. Mrs. Stackpole's father, Senator J. K. P. Hall, had started the Stackpole Carbon Company for decedent, who at that time was working as a bank clerk. The majority of the stock of the corporation had at all times been held by the Hall family, and Mrs. Stackpole did not want Mr. Stackpole's stock to get out of her family and in particular did not want Miss Wittman to have any influence in the affairs of the company.

34. The plan of the trusts, including the provision giving the life income to Mr. Stackpole, originated in the mind of Mrs. Stackpole. Even though Mr. Stackpole was so anxious to obtain a divorce that he would have given up the stock entirely, Mrs. Stackpole thought it fair to permit Mr. Stackpole to have the income during his lifetime.

35. The deeds of trust were prepared under the direction of Mrs. Stackpole's brother, William E. Hall, Esquire, of Hall, Cunningham & Haywood, New York City. Alfred W. Haywood, Esquire, of that firm drafted the instruments. Decedent did not at any time consult with Mr. Hall or Mr. Haywood in the drafting of the deeds of trust. Upon completion of the deeds of trust to

the satisfaction of Mrs. Stackpole, Mr. Hall forwarded them to John G. Whitmore, Esquire, Ridgeway, Pennsylvania, who represented Mrs. Stackpole in the divorce proceedings. The decedent signed the deeds of trust in Mr. Whitmore's office without asking for a single change in them. Decedent was not represented by counsel. Decedent signed the deeds of trust on March 31, 1930, and the decree of divorce was entered the next day.

36. Decedent's dominant motive in creating the trusts was to obtain a divorce so that he could marry Adelaide Wittman.

37. The decedent enjoyed good health and did not require the services of his family physician from 1929 until 1944, except for a routine physical examination in 1932. Decedent suffered a heart attack on June 15, 1944.

38. The creation of the trusts in 1930 was not motivated in any way by the condition of decedent's health.

39. Decedent was an ardent outdoor sportsman and took frequent and arduous hunting and fishing trips until 1944. On these trips he showed remarkable stamina. Decedent was a member of the Pennsylvania Game Commission and of the Board of Governors of the Boy Scouts of America, trained dogs, and was enthusiastically interested in other outdoor sports. He leased hunting grounds in North Carolina, built a hunting lodge near his home in 1933, was the president and director of numerous clubs, traveled extensively, built a swimming pool at his home in 1934, adopted a child in 1937, was active in the operation and building program of the local hospital, engaged in a real estate development in Florida in 1939, and built a large addition to his house in 1939. The only will of which there was any evidence was drawn approximately a year before his death.

40. Decedent's transfers in 1930 were not made in contemplation of death.

41. Upon the signing of the trust agreements, decedent delivered to the trustee the endorsed stock certificates and thereafter the trustee held them in his safe deposit box. Dividends on the stock held in the trusts were paid directly to decedent under the instructions of the trustee. On February 1, 1937, after the stock dividend of December 31, 1936, the stock was transferred on the records of the company to the name of the trustee in accordance with the trust agreements. Decedent did not control Stackpole Carbon Co.

42. The recapitalization of Stackpole Carbon Co. in 1936 and the stock dividend in 1939 were accomplished to reduce the value of each share for the benefit of stockholders other than decedent, and decedent had no interest in these transactions other than to accommodate the other stockholders. There was no agreement between the decedent and the trustee concerning the voting of the stock.

### Discussion

The issue raised by the parties with respect to plaintiffs' complaint is whether or not the stock distributions of 1936 and 1939 were property of the decedent. Defendant contends that such stock or a portion thereof was property of the decedent because the provision of the trusts involved, providing that stock dividends should be deemed to constitute principal, was invalid under Pennsylvania law. The evidence clearly indicates that the question of the validity of that provision with respect to the stock in question was raised in adversary proceedings in the Orphans' Court of Elk County, Pennsylvania, which court decided in careful, thorough opinions that the trust provisions were valid and that the stock was not property of the decedent, i. e., the income beneficiary. The Orphans' Court had jurisdiction to adjudicate and did adjudicate the rights of all parties claiming interests in the stock.

Defendant draws an inference of collusiveness from the fact that its contention with respect to the validity of the trust provisions was never raised in a state court until after the question had been raised with respect to decedent's

estate tax liability, and from the fact that no appeal was taken to the Pennsylvania Supreme Court from the state court's adjudications. These facts do not sustain the charge of collusiveness. Cf. Blair v. Commissioner, 1937, 300 U. S. 5, 10, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 1934, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634. The most that can reasonably be inferred from these facts and from the evidence is that neither the parties involved nor their counsel nor Orphans' Court Judge Hipple nor anyone else involved, other than defendant, has ever believed that the trust provisions were invalid. Unanimity of disagreement with defendant on a question of Pennsylvania law is far from sufficient to support an inference of collusiveness. The adverse positions of the parties to the Orphans' Court proceedings and the opinions of President Judge Hipple clearly indicate that the judgments of that court were not collusively obtained, in the absence of any evidence to the contrary.

It follows that the state court's adjudications with respect to the ownership of the stock are conclusive here. Gallagher v. Smith, 3 Cir., 1955, 223 F.2d 218. This court does not sit as a state appellate court to affirm or reverse the Orphans' Court of Elk County. As stated in the Gallagher case, 223 F.2d at page 223:

> "An adjudication of such a question of title by a court of the state must accordingly be given effect, not because it is res judicata against the United States, but because it is conclusive of the parties' property rights which alone are to be taxed. So far as those parties are concerned the law of the state is what the state court has declared and applied in their case. If the state court's judgment has binding final effect under the state law the rights of the parties can only be what the court has held them to be. It is for this reason that the federal court should not in a case of this kind make an independent examination and application of state law."

It may be noted that Judge Kalodner's dissenting opinion in Gallagher did not take issue with the majority as to the effect to be given to adjudications of state courts as to the ownership of property, but only with the interpretation to be placed upon the Orphans' Court decision involved in that case. There is no dispute as to the interpretation of Judge Hipple's decisions in this case.

Nevertheless, defendant insists that Judge Hipple's decisions were erroneous and that the Gallagher case is erroneous. In short, in effect, this court is asked to overrule the decision of the Third Circuit and to reverse the decrees of the Orphans' Court of Elk County, Pennsylvania. The request is frivolous and does not merit discussion.

Defendant's answer and amended answer set forth claims which are admittedly barred by limitations and are, therefore, asserted only by way of setoff. See Lewis v. Reynolds, 1932, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293. Plaintiffs contend that defendant has the burden of proof with respect to such claims. It has been unnecessary to consider this contention, however, because, in the opinion of the court, plaintiffs have sustained the burden of disproving the allegations asserted in support of defendant's claims of setoff.

 The claims asserted by the answer and amended answer are (1) that the transfers made by decedent under the 1930 trusts were without consideration and were made in contemplation of death and/or intended to take effect in possession and enjoyment at or after death under Int.Rev.Code of 1939, § 811 (c) (1) (A) and (C), 53 Stat. 120, as amended; (2) that decedent's "relinquishment" of the 1936 and 1939 stock dividends were final dispositions of such stock made in contemplation of death and/or intended to take effect in possession or enjoyment at or after death; (3) that the 1930 trusts were executed by decedent without donative intent and

were without a valid consideration, so that decedent owned all of the stock of the trusts within the meaning of § 811 (a).

1. Clearly the 1930 transfers did not cause the trust property to be taxable under § 811(c) (1) (C) because no reversionary interest in the trust property was retained by decedent. Commissioner of Internal Revenue v. Marshall's Estate, 3 Cir., 1953, 203 F.2d 534.

With respect to the claim that the trusts were made in contemplation of death, the evidence paints a picture of decedent in 1930 as a man who was actively interested in, planning for, and reasonably expecting a long life and not contemplating death. Both parties agree that decedent's dominant motive in executing the 1930 trusts was to obtain a divorce so that he could marry his secretary. His wife's motives, intentions, and contemplations in wanting the trusts to be executed are clearly irrelevant; decedent's motive for the transfers was not, as was the decedent's in In re Kroger's Estate, 6 Cir., 1944, 145 F.2d 901, certiorari denied, 1945, 324 U.S. 866, 65 S.Ct. 915, 89 L.Ed. 1421, to keep the property out of his second wife's hands upon his death. Contemplation of life rather than death clearly constituted the inducing cause of decedent's transfers under the 1930 trusts. See Gillette's Estate v. Commissioner, 9 Cir., 1950, 182 F.2d 1010; Cowles v. United States, 2 Cir., 1945, 152 F.2d 212; Lippincott v. Commissioner, 3 Cir., 1934, 72 F.2d 788.

2. Defendant's contention based on the asserted "relinquishment" by decedent of the 1936 and 1939 stock distributions to the corpora of the trusts seems to be nothing more than another expression of defendant's disagreement with Judge Hipple's decisions as to the ownership of the stock dividends. Decedent never relinquished or transferred the stock dividends, in contemplation of death or otherwise, because he never had any interest in that stock to relinquish or transfer.

3. Defendant's contention that decedent owned all of the trust property because the 1930 transfers lacked a donative intent or a valid consideration cannot be sustained.

It is clear that decedent intended to transfer and did transfer the stock to the trusts in 1930. Whether his intent in so doing was donative or contractual is immaterial.

Defendant's contention based upon the allegedly illegal consideration for the transfers to the trusts necessarily assumes a number of doubtful propositions:

a. Any contention which leads defendant to the conclusion that decedent was the owner of any or all of the stock at his death necessarily assumes that the state court's adjudications to the contrary are not conclusive in this action. It is true that no contention was made before Judge Hipple that the trusts were illegal. Nevertheless, his adjudications as to the ownership of the stock in accordance with the trust provisions, which is all that concerns us here, are conclusive on that question of property so far as the law of Pennsylvania is concerned, and the adjudications were not collusively obtained. See Gallagher v. Smith, supra, 223 F.2d at pages 224–225.

b. Defendant's position necessarily must be that parol evidence of an illegal agreement for a divorce would be admissible to invalidate the trust agreements, which are valid on their face. In this connection, it should be noted that Mrs. Stackpole, who allegedly made an illegal agreement to obtain a divorce, was not a party to the trust agreements, and neither the trustee nor any of the beneficiaries of the trust agreements was a party to the alleged illegal agreement for a divorce. See Miller v. Miller, 1925, 284 Pa. 414, 131 A. 236; Irvin v. Irvin, 1895, 169 Pa. 529, 32 A. 445, 29 L.R.A. 292; cf. Restatement, Contracts, §§ 597, 603 (1932); but cf. American National Bank v. Kirk, 1935, 317 Pa. 551, 177 A. 801; Forbes v. Forbes, 1946, 159 Pa. Super. 243, 48 A.2d 153; Doering v. Doering, 1945, 157 Pa.Super. 9, 41 A.2d 358.

c. Defendant's position must be that the trust agreements were in consideration of a divorce and not merely in contemplation of a divorce. Agreements made in the circumstances here disclosed are held in most of the reported cases to be merely in contemplation of divorce, and such agreements are presumptively valid and are favored rather than disfavored by the Pennsylvania courts. See Schmoker v. Schmoker, 1948, 359 Pa. 272, 59 A.2d 55; In re Neller's Estate, 1947, 356 Pa. 628, 53 A.2d 122; Zlotziver v. Zlotziver, 1946, 355 Pa. 299, 49 A.2d 779; American National Bank v. Kirk, supra; Miller v. Miller, supra; Commonwealth ex rel. Rossi v. Rossi, 1947, 161 Pa.Super. 86, 53 A.2d 887; Forbes v. Forbes, supra; Greene v. Greene, 1942, 150 Pa.Super. 182, 27 A.2d 525; Schofield v. Schofield, 1937, 124 Pa. Super. 469, 189 A. 572; In re Pierce's Estate, 1936, 123 Pa.Super. 171, 187 A. 58.

d. Defendant's position must be not merely that the trust agreements were unenforceable, but that the ownership of the stock did not pass in accordance with their terms. It is true that the Pennsylvania courts have refused to enforce agreements which were clearly and on their face in consideration of a divorce. In re Shannon's Estate, 1927, 289 Pa. 280, 137 A. 251; Commonwealth ex rel. Miller v. Miller, 1954, 176 Pa.Super. 64, 106 A.2d 627. But we are not concerned with the question of whether the trust agreements were enforceable, i. e., of whether decedent could have been required to perform his agreements to transfer the stock to the trustee. He did perform the agreements, and the ownership of the stock was transferred in accordance with the agreements. That is decisive of the issue raised here. Nothing in the law of Pennsylvania relating to collusive and illegal agreements justifies the conclusion that decedent could have set up the alleged illegal agreement for a divorce in order to rescind the transfer of the stock to the trustee. Cf. New York & Pennsylvania Co. v. Cunard Coal Co., 1926, 286 Pa.

72, 132 A. 828; Paul v. Paul, 1920, 266 Pa. 241, 109 A. 674; In re Mathiot's Estate, 1914, 243 Pa. 375, 90 A. 139; McKee v. Verner, 1913, 239 Pa. 69, 86 A. 646, 44 L.R.A.,N.S., 727; Jackson v. Thomson, 1908, 222 Pa. 232, 70 A. 1095; Restatement, Contracts, § 598 and Comment c.

For the foregoing reasons, after consideration of the evidence and the contentions of the parties, the court makes the following:

## Conclusions of Law

1. This court has jurisdiction of the parties and the subject matter of this action.

2. The Orphans' Court of Elk County, Pennsylvania, had jurisdiction to adjudicate and did adjudicate the rights of all parties claiming or having interests in the property received by the trustee of the trusts created by decedent.

3. The decrees of the Orphans' Court of Elk County, Pennsylvania, that the shares of stock of Stackpole Carbon Company received by the trustee of the trusts in 1936 and 1939 were the property of the remaindermen under the trusts are final determinations of that question under the law of Pennsylvania and may not be reviewed in this action.

4. Neither the said shares of stock received by the trustee in 1936 and 1939 nor the shares of stock transferred to the trustee in 1930 were property in which decedent had an interest at the time of his death under Section 811(a) of the Internal Revenue Code.

5. The transfers by the decedent to the trusts were not testamentary dispositions.

6. Said trusts were not created in contemplation of death within the meaning of Section 811(c) (1) (A) of the Internal Revenue Code.

7. The property of said trusts is not taxable as a transfer by decedent intended to take effect in possession or enjoyment at or after decedent's death under Section 811(c) (1) (C) of the Internal Revenue Code.

8. The shares of stock received by the trustee in 1936 and 1939 were not property of decedent and were never transferred by decedent within the meaning of Section 811(c) of the Internal Revenue Code.

9. The property held by the trustee of said trusts was completely and irrevocably transferred to the trustee by decedent before his death. Such transfer was not void or voidable.

10. No part of the value of the property transferred by decedent to the trusts in 1930 or of the stock of Stackpole Carbon Company received thereafter is includible in decedent's estate under the Internal Revenue Code.

11. Plaintiffs have overpaid the federal estate tax on decedent's estate in the amount by which the payment represented tax on the value of stock held by the trustee of the trusts created by decedent and are entitled to recover such amount together with interest and costs as provided by law.

Entry of judgment will be suspended pending the filing of a stipulation by the parties showing the amount due the plaintiffs.